OPINION OF THE COURT
Charles Edward Ramos, J.
In motion 3, dated October 8, 2003, defendant Monique Pillard moves pursuant to CPLR 3211 (a) (1), (2), (4), (5), (7) and (8) to dismiss the action.
In motion 4, dated October 26, 2003, defendant John Casablancas moves pursuant to CPLR 3211 (a) (1), (2), (4), (5) and (7) to dismiss the action.
In motion designated 5, dated November 25, 2003, defendants ID Model Management and Paolo Zampolli move pursuant to CPLR 3211 (a) (7) and (8) to dismiss the complaint.
In motion 6, dated December 5, 2003, defendant Click Model Management, Inc. moves by order to show cause to extend time to answer, move or otherwise respond to plaintiffs’ amended complaint. Click moves on behalf of Elite Model Management, Inc.;[1] Ford Models Inc.; Boss Models Inc.; Next Management Corp.; Q Model Management also known as Que Model Management; Women Model Management; Wilhelmina Models, Inc.; Marilyn Model Management, Inc.; Joseph Grill; Frances Grill; John Casablancas; Monique Pillard; Gerald Marie; Gerry Ford; Eileen Ford; Katie Ford; Joel Wilkenfeld; Faith Kates; Marilyn Gauthier; Dieter Esch; Natasha Esch; Ana-Gaby Esch; and Paul Rowland. The request for an extension of time was granted and the parties agreed to a briefing schedule for defendants’ joint motion to dismiss, which was submitted as motion 8.
In motion 7, dated December 14, 2003, defendants New York (NY) Model Management, Cory Bautista and Heinz Holba move *348 pursuant to CPLR 3211 (a) for dismissal of the complaint.[2] By-letter from Robert J. Hantman, dated May 24, 2004, who submitted motion 7, the court was informed that defendant George Gallier joined motion 7.
In motion 8, dated March 12, 2004, Ford Models, Inc., Gerard W Ford (also known as Gerry Ford), Eileen Ford, Mary Katherine Ford (also known as Katie Ford), Marion Smith, and Joseph Hunter move pursuant to CPLR 3211 (a) (1), (2), (4), (5) and (7) to dismiss the action. Defendants’ “Joint Motion to Dismiss” was filed on behalf of the following defendants as well: Boss Models, Inc., David Bosman, Click Model Management, Inc., Joseph Grill, Frances Grill, Allan Mindel, John Casablancas, Robert Flutie, Images Management, Heinz Vollenweider, Q Model Management, Diva Entertainment, ID Model Management, Paolo Zampolli, International Management Group, Inc., IMG Models, Inc., Barbara Lantz, Gerald Marie, New York Models, also known as New York Model Management, Cory Bautista, Heinz Holba, Next Management Corp., Partnership Holding, Claxon Inc., Wilcor Group, Faith Kates, Joel Wilkenfeld, One Model Management, Scott Lipps, Paul Rowland, Men/ Women Model Management, T Model Management, Wilhelmina Models, Inc., Wilhelmina International, Ltd., Lorex A.G., Dieter Esch, Ana-Gaby Esch, Natasha Esch, Robert Kreusler, Creation Management LLC, Brad Krassner, the Krassner Family Foundation, Marilyn Model Management Inc., Marilyn Gauthier. Counsel for Lorex A.G. submitted a reply affirmation dated May 14, 2004 in which Lorex joined the joint motion to dismiss.[3] By letter dated October 22, 2004, the court was informed that defendants Gerald Marie and Alain Kittler had joined the joint motion to dismiss. In a letter dated November 30, 2004, pro se defendant Douglas Asch stated that he wished to join the March 12, 2004 joint motion to dismiss.
The Shelton action was initiated in April 2003. Plaintiffs lodge very serious accusations in their 58-page amended complaint *349 dated November 3, 2003 including: undisclosed kickbacks to modeling agencies (114); circumventing the Employment Agency Law by using “captive” affiliates to book Screen Actors Guild and AFTRA jobs, both of which require bookings only through licensed agents (IT 4); price gouging of models (U 7); resigning their Department of Consumer Affairs (DCA) licenses in the early 1970s (If 154), then denying to the models and the DCA the modeling agencies’ legal status as employment agencies in order to avoid the 10% limit on such fees (1Í1Í 92, 103); double-dipping by charging models 20% and model employers 20% resulting in the agency collecting one third of the amount paid plus reimbursement for expenses and without disclosing their full compensation to their client models (1Í137); collusion among model agencies to set fees (1Í138); and collusion of agencies in not advising models to seek DCA assistance when another model agency, notorious for not paying models even after it had been paid, failed to pay the models (HU 154, 155).
The complaint sets forth four classes of plaintiffs: (1) the “Model Agency Class” who are all current and former professional models who booked work through any of the defendant agencies from 1971 to the present; (2) the “Elite Class” who are current and former professional models who are or were represented by any of the Elite defendants from 1977 to the present; (3) the “Wilhelmina Class” who are current and former professional models represented by Wilhelmina Models, Inc. from 1989 to the present; and (4) the “Ford Class” who are current and former professional models represented by Ford Models, Inc. from 1989 to the present.
The Shelton complaint consists of nine causes of action: (1) by the Model Agency Class against the model agency defendants for injunctive relief and damages under General Business Law § 349 for false statements made to aspiring models and regulators; (2) by the Model Agency Class against all defendants for damages arising from violations of General Business Law article 11 and New York State common law; (3) by the Elite Class against the Elite defendants for breach of fiduciary duty and misrepresentation; (4) by the Elite Class against the Elite defendants for fraud, breach of fiduciary duty and violations of and conspiracy to violate General Business Law §§ 170-190; (5) by the Wilhelmina Class against the Wilhelmina defendants for breach of fiduciary duty and misrepresentation; (6) by the Wilhelmina Class against the Wilhelmina defendants for fraud, breach of fiduciary duty and violations of and conspiracy to *350 violate General Business Law §§ 170-190; (7) by the Ford Class against the Ford defendants for breach of fiduciary duty and misrepresentation; (8)[4] by the Wilhelmina Class against the Wilhelmina defendants[5] for fraud, breach of fiduciary duty based on violations of and conspiracy to violate General Business Law §§ 170-190; and (9) by the individual plaintiffs Shelton, Shea, Johnson, and Connor against the Elite defendants for a declaratory judgment that their contracts are void and unenforceable under General Business Law article 11.
The allegations in the Fletcher action are even more shocking: Fletcher’s first booker allegedly offered her drugs and once tried to force himself on her, and when she complained, he was transferred to prey upon other models (1118); when Fletcher challenged Elite about expenses deducted from her earnings, it somehow lost her portfolio (U 23); billing models without documentation for expenses (1i 29); allocating overhead administrative expenses to models (1i 29); receiving payments for jobs, but denying payments by hiding payments in offshore accounts (H1i 30-34). Fletcher’s January 12, 2004 complaint includes five causes of action for: conversion violation of section 51 of the Civil Rights Law, breach of fiduciary duty, misrepresentation, violation of General Business Law article 11, and violation of General Business Law § 349.
A related federal class action is pending before Judge Harold Baer in the Southern District of New York (Index No. 02 Civ 4911 [HB]), entitled Fears et al. v Wilhelmina Model Agency, Inc., originally filed as Masters v Wilhelmina Model Agency, Inc. In his decision addressing defendants’ motion to dismiss, Judge Baer described the antitrust action with pendant state claims as follows:
“Plaintiffs, consisting of models who work or have worked at some point over the past three decades for New York modeling agencies, bring this lawsuit as a class action against the modeling agencies for allegedly violating federal antitrust and New York state laws by, inter alia, (1) conspiring to set the fees charged to models and to fix other terms and conditions of the plaintiffs’ contracts; (2) knowingly *351 charging plaintiffs fees in excess of the maximum amount permitted by New York law; and (3) deliberately breaching their fiduciary duties through various unlawful practices, including earning undisclosed profits from third parties, billing models for phony expenses, and making profits on services which were agree to be provided at cost.” (2003 WL 145556, *1, 2003 US Dist LEXIS 698, *2-3 [SD NY, Jan. 17, 2003].)
According to plaintiffs, the only plaintiffs in this action, but not in the federal action, are Shelton, who was disqualified as a class representative in the federal action, Shea and Johnson.
Plaintiffs filed and served an amended complaint dated November 2003. The action was transferred to this court from Justice Gammerman on December 16, 2003. On September 30, 2004, Judge DeGrasse consolidated the Fletcher action[6] with this action.[7]
On February 17, 2004, the court was advised that Elite Model Management Corp., Monique Pillard and Company Models had filed for bankruptcy, automatically staying this action against them. On December 7, 2004, Bankruptcy Judge Drain considered a motion by plaintiffs’ counsel in this action for relief from the automatic bankruptcy stay. Judge Drain indicated on the record (transcript at 122-126), though he did not issue an order, that the stay might apply to Mr. Casablancas, Mr. Marie and Mr. Kittler as officers of Elite. (Hayes letter dated Dec. 9, 2004.)
The motions to dismiss were argued on May 20, 2004. On July 16, 2004, the court was advised that a settlement had been reached in the related federal action. As part of that settlement, *352 plaintiffs agreed to dismiss 33 defendants in this action,[8] leaving 27 nonbankrupt defendants. According to a November 8, 2004 letter from plaintiffs’ counsel, Mr. Haazan, and the settling defendants, the settlement would result in dismissal of counts 5 to 8 of the complaint because they involve only settling defendants and count 9 is dismissed to the extent that it involves settling defendants. By letter dated November 23, 2004, Casablancas challenged whether any settlement had been reached. On March 18, 2005, the court received a phone message that the “Elite defendants”[9] were settling, which was confirmed by letter on May 13, 2005.
Due to the constant state of flux in the action, the court delayed decision on the motions waiting for activities to settle down and for clarity with regard to which parties remained, which causes of action remained and which motions remained. The parties’ papers added to the confusion when, for example, plaintiffs stated in their January 20, 2004 brief that only counts 1 and 2 of the complaint applied to NY Models, but, in the same brief, plaintiffs addressed breach of fiduciary duty claims against NY Models in counts 3 through 8. The court made several requests to the parties to clarify these outstanding issues. Instead of clarity, the court’s requests yielded inappropriate letters rearguing the motions and even more motions for sanctions *353 and contempt. By letter dated April 14, 2005, the nonsettling defendants advised the court that the only remaining claims against them were counts 1 and 2 and that they awaited a decision on their joint motion to dismiss.[10] Finally, the court received a letter from plaintiffs, dated June 20, 2005,[11] setting forth the remaining defendants in this action: Joseph Hunter; Marion Smith; Gtempany Models; Michael Flutie; Robert Flutie; ID Model Management; Paolo Zampolli; George Gallier; Karin Models LLC; Jean-Luc Brunei; Metropolitan Model Agency USA, Inc.; Metropolitan Models Paris; Thomas Zeumer; Michel Levaton; New York Models, also known as New York Model Management; Diva Entertainment; T Model Management; Women Model Management; and Paul Rowland.[12] However, plaintiffs did not address which claims remained, nor did plaintiffs dispute defendants’ contention that only the first and second causes of action remained.
Though the settlement has yet to be approved by this court, as a result of the proposed settlement, motions 3 and 4 shall be denied as moot with leave to renew upon five days’ notice. Accordingly, motions 5, 6, 7 and 8 are undecided as to the remaining defendants and as to counts 1 and 2 only.
Defendants jointly move to dismiss this action. They argue that count two, for violations of General Business Law article 11, should be dismissed because there is no private right of action under article 11. Count 1, for violation of General Business Law § 349, should be dismissed because it is impermissibly derivative of plaintiffs’ article 11 claim. Defendants also argue that plaintiffs have failed to state a claim under General Business Law § 349 for a variety of reasons, that defendants’ alleged misrepresentations to the DCA are constitutionally protected and claims by non-New York plaintiffs who received services *354 outside of New York are outside the scope of General Business Law § 349’s protection. According to defendants, plaintiffs lack standing to bring General Business Law article 11 and § 349 claims against defendants with whom plaintiffs have no contractual relationship. Finally, defendants argue that plaintiffs’ first and second causes of action are time-barred. Since the court grants defendants’ joint motion to diSniss, it is unnecessary to address the remaining individual defendants’ motions.
General Business Law article 11 governs employment agencies. (General Business Law § 170.) Employment agencies must be licensed (General Business Law § 172); their fees are limited (General Business Law § 185); they may not charge employees for incidental services such as the cost of advertising (General Business Law § 187 [10]); they must file a $5,000 bond (General Business Law § 177) upon which a damaged person may sue (General Business Law § 178) and their contracts must include the provisions of General Business Law § 181 (1), §§ 185 and 187. Violation of General Business Law § 172, the licensing requirement, is a misdemeanor subjecting the guilty person to a fine of not more than $1,000 or imprisonment of not more than one year. (General Business Law § 190.) An “employment agency” is defined as:
“2. a. ‘Employment agency’ means any person (as hereinafter defined) who, for a fee, procures or attempts to procure:
“(1) employment or engagements for persons seeking employment or engagements, or
“(2) employees for employers seeking the services of employees.
“b. ‘Employment agency’ shall include any person engaged in the practice of law who regularly and as part of a pattern of conduct, directly or indirectly, recruits, supplies, or attempts or offers to recruit or supply, an employee who resides outside the continental United States (as defined in section one hundred eighty-four-a of this article) for employment in this state and who receives a fee in connection with the arrangement for the admission into this country of such workers for employment.
“c. ‘Employment agency’ shall include any person who, for a fee, renders vocational guidance or counseling services and who directly or indirectly:
“(1) procures or attempts to procure or represents *355 that he can procure employment or engagements for persons seeking employment or engagements;
“(2) represents that he has access, or has the capacity to gain access, to jobs not otherwise available to those not purchasing his services; or
“(3) provides information or service of any kind purporting to promote, lead to or result in employment for the applicant with any employer other than himself.
“d. ‘Employment agency’ shall include any nurses’ registry and any theatrical employment agency (as hereinafter defined).
“e. ‘Employment agency’ shall not include: (1) any employment bureau conducted by a duly incorporated bar association, hospital, association of registered professional nurses, registered medical institution, or by a duly incorporated association or society of professional engineers, or by a duly incorporated association or society of land surveyors, or by a duly incorporated association or society of registered architects; (2) any speakers’ bureau as defined in subdivision eleven hereof; (3) any organization operated by or under the exclusive control of a bonafide nonprofit educational, religious, charitable or eleemosynary institution[;] (4) any person, firm, corporation or organization defined and regulated by sections one hundred ninety-one through one hundred [fig 1] ninety-three of this chapter.” (General Business Law § 171 [2].)
A “theatrical employment agency” is defined in General Business Law § 171 (8) as:
“8. ‘Theatrical employment agency’ means any person (as defined in subdivision seven of this section) who procures or attempts to procure employment or engagements for circus, vaudeville, the variety field, the legitimate theater, motion pictures, radio, television, phonograph recordings, transcriptions, opera, concert, ballet, modeling or other entertainments or exhibitions or performances, but such term does not include the business of managing such entertainments, exhibitions or performances, or the artists or attractions constituting the same, where such business only incidentally involves the seeking of employment therefor.” (Emphasis added.)
In his January 17, 2003 decision, Judge Baer determined that General Business Law article 11 does not explicitly provide for a *356 private right of action, so he thoroughly analyzed whether a private right of action could be implied in General Business Law article 11. As he stated, while plaintiffs are members of the class to be protected by General Business Law article 11 and a private right of action would promote the legislative purpose of protecting working people such as models from unscrupulous employment agencies, a private right of action would be inconsistent with the legislative scheme. He held plaintiffs had no implied private right of action and dismissed plaintiffs’ article 11 claims and nonarticle 11 claims because they were impermissibly premised on violation of article 11.
Judge Baer’s decision is not binding on this court under theories of res judicata or collateral estoppel to the extent that the parties here are different. Rather, a fundamental underpinning of both res judicata and collateral estoppel is that every person is entitled to his day in court. (Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979].) Therefore, the action must be dismissed as to any plaintiffs who were plaintiffs in the federal action. Shelton, Shea and Johnson were not parties to the federal action, however, and they are entitled to their day in court.
Although we find Judge Baer’s reasoning for finding that there is no implicit private right of action under General Business Law article 11 to be sound, we disagree that it is necessary to engage in the analysis at all. We find that General Business Law article 11 explicitly provides for a private right of action, disposing of any need to look for an implicit right.
General Business Law § 177 provides that licensed modeling agencies shall file a $10,000 bond. General Business Law § 178, derived from a 1904 predecessor statute, provides that “[a] 11 claims or suits in any court against any licensed person may be brought in the name of the person damaged upon the bond deposited by such licensed person.” In 1975, the Legislature added to General Business Law § 178, as part of its comprehensive overhaul of article 11, that “the commissioner may institute a suit against the bond on behalf of any person damaged.” (Emphasis added.) Judge Baer relies on the fact that the Legislature failed to add a private right of action in 1975. It was unnecessary since General Business Law § 178 already provided for one, albeit limited. In 1904, the predecessor statute to current General Business Law § 177 also provided that
“[i]f any person shall be aggrieved by the misconduct of any licensed person, and shall recover judgment *357 against him therefor, such person may, after the return unsatisfied, either in whole or in part, of any execution issued upon said judgment, maintain an action in his own name upon the bond of said employment agency.”
Today, the same section reads
“The bond . . . shall be conditioned that the person applying for the license will comply with this article, and shall pay all damages occasioned to any person by reason of any misstatement, misrepresentation, fraud or deceit, or any unlawful act or omission of any licensed person ... or caused by any other violation of this article in carrying on the business for which such license is granted.” (General Business Law § 177 [2] [emphasis added].)
Clearly, then, as to licensed employment agencies, there is a private right of action.
An explicit private right of action complements the DCA’s enforcement powers. Under General Business Law § 189 (5), for example, following a hearing, the DCA may revoke a license or levy a fine against a licensed employment agency of $500 for each violation. Neither remedy benefits the victimized employee.
This raises the question of whether the private right of action would allow an employee to bring an action against a nonlicensed employment agency as well. The answer is yes. The court need only look to article 11 itself. For example, General Business Law § 186 requires a refund for excessive fees within seven days of demand. However, it fails to state who must make the demand upon the employment agency and is not limited to licensed employment agencies. Indeed, section 186 has been successfully used defensively by defendant employees against unlicensed employment agencies in the agencies’ breach of contract actions to collect fees. (Dorrell Assoc. v Urb Prods. Corp., 67 Misc 2d 716 [Civ Ct, NY County 1971] [contract void and unenforceable by unlicensed employment agency]; Pine v Laine, 36 AD2d 924 [1st Dept 1971] [defense based on plaintiffs lack of a license successful in action where employment agency could not come within exception since performer already had a personal manager], affd 31 NY2d 988 [1973]; Allen v Brice, 165 Misc 181 [Sup Ct, NY County 1937] [plaintiff manager’s complaint, which stated that he was engaged to secure employment but failed to state he was licensed, was dismissed].) In one case, an employee successfully brought an action using General *358 Business Law § 186 affirmatively to escape his obligation to an unlicensed employment agency. (Friedkin v Harry Walker, Inc., 90 Misc 2d 680 [Civ Ct, NY County 1977] [contract with unlicensed booking agent who secures lectures held unenforceable].)
The legislative history is not inconsistent with this conclusion. Rather, it is silent on the issue of any kind of private right of action. The divide between the Governor and legislators as to whether state or local authorities should license and regulate employment agencies has been misinterpreted by defendants as precluding a private right of action. They are not mutually exclusive. In his January 1958 message to the Legislature, the Governor called for statewide control of employment agencies. (1958 NY Legis Ann, at 357; see also, Governor’s Mem on Bills Approved, 1963 NY Legis Ann, at 451.) “A study by the [New York State Department of Labor] has demonstrated that some local authorities have done nothing to enforce the law.” (Governor’s Mem on Bills Approved, 1958 NY Legis Ann, at 484.) Later that year, maintaining this objection, the Governor signed the bill slightly modifying the Employment Agency Law but rejecting his call for a major overhaul and effective regulation. (Governor’s Mem on Bills Approved, 1958 NY Legis Ann, at 484; see also, Bill Jacket, L 1958, ch 893: Mem to Hon. Daniel Gutman, Counsel to Governor; Mem of Commerce and Industry Association of New York, Inc.; Mem for Governor prepared by Department of Law; Budget Report on Bills.) It was not until 1975 that the Governor’s objection was addressed when the New York State Industrial Commissioner was authorized to enforce the statute outside of New York City. (July 3, 1975 letter from Sen. Joseph Pisani to Counsel to Governor, Bill Jacket, L 1975, ch 632.) This dispute had nothing to do with a private right of action; nor could it. An individual cannot license or regulate. Therefore, plaintiffs have a private right of action against a modeling agency which should be licensed as an employment agency.
The next issue is whether defendants are employment agencies subject to the licensing requirement. Defendants contend that they fit within article ll’s “incidental booking exception,” which applies when finding employment for models is only incidental to their agreements with the models. (General Business Law § 171 [8].) Plaintiffs counter that the only service provided by defendants is to secure employment, thus the exception is inapplicable. Therefore, plaintiffs conclude that modeling *359 agencies are employment agencies, must be licensed, and having failed to do so are liable for compensatory damages.
In addition to the parties’ positions on this issue, another recent event informs this decision on whether modeling agencies should be licensed under the Employment Agency Law. The answer to this question may be resolved eventually by the New York Legislature. A recent bill A 8381-A/S 5602 was overwhelmingly passed by both houses, but vetoed by the Governor on August 19, 2005. It provides that it is “[an act] to amend the general business law . . . , in relation to regulation of theatrical employment agencies,” the purpose of which, according to the sponsor’s memorandum is “[t]o clarify the difference between a ‘personal manager’ and a ‘theatrical employment agency.’ ” Its sponsor explains that it is intended to help the modeling industry, which has been involved in time consuming, distracting and costly litigations all arising from the definition of the term “model management” and whether modeling agencies differ from employment agencies. According to the Assembly sponsor, they differ. Governor Pataki stated that he was “constrained” to veto the bill based on the objections of the New York State Consumer Protection Board and the Screen Actors Guild, which were concerned about unscrupulous employment agencies using the proposed definition of “personal manager” to provide employment services, but outside the protection of the law. The Governor was sympathetic to the modeling industry’s woes. However, the law has not changed yet and therefore the court is compelled to continue its analysis.
Whether the incidental booking exception applies in this case is not an issue that can be resolved on a motion to dismiss. In some cases, this determination can be made from the contracts themselves, but that is not true here. (Mandel v Liebman, 303 NY 88 [1951]; Friedkin v Harry Walker, Inc., 90 Misc 2d 680 [Civ Ct, NY County 1977]; Gervis v Knapp, 182 Misc 311 [Sup Ct, NY County 1943] [defendant singer’s motion for summary judgment denied because contract established that plaintiff was primarily a manager, thus not subject to the General Business Law].) Here, the complaint alleges that defendants specifically disavowed in their contract that they were employment agencies and denied that they were subject to article 11. Rather, the circumstances of each modeling agency defendant must be considered by a trier of fact. (Hyde v Vinolas, 234 App Div 364 [1st Dept 1932]; Greenfield v Tripp, 10 AD2d 638 [2d Dept 1960], rearg and lv denied 10 AD2d 850 [2d Dept 1960]; *360 Pawlowski v Woodruff, 122 Misc 695 [App Term, 1st Dept 1924], affd 212 App Div 871 [1st Dept 1925]; Lustig v Schoonover, 51 NYS2d 156 [Sup Ct, NY County 1944], affd 269 App Div 830 [1st Dept 1945]; Farnum v O’Neill, 141 Misc 555 [Municipal Ct, Borough of Manhattan 1931].) Nonetheless, for the purposes of a motion to dismiss, plaintiffs have stated a cause of action under article 11.
Next, defendants argue that the action is time-barred. A three-year statute of limitations applies to General Business Law § 349 claims under CPLR 214 (2). (Gaidon v Guardian Life Ins. Co. of Am., 96 NY2d 201 [2001].) A cause of action accrues under General Business Law § 349 (h) when a plaintiff has been injured by a deceptive act or practice. Defendants assert that the claims accrued when plaintiffs executed contracts: Shelton by IMG from 1989 to 1993; Connor by Wilhelmina beginning in 1988; Fears by Ford from 1989; Johnson by Elite from 1979; Shea by Elite since 2000 and Fletcher by Elite from 1998 to 2000. Plaintiffs claim the injury occurred in 2002 when plaintiffs discovered, as a result of their investigations for the Fears action, defendants’ bad acts. The critical question is when were plaintiffs injured by the alleged deceptive act. (Soskel v Handler, 189 Misc 2d 795 [Sup Ct, Nassau County 2001].)
Plaintiffs’ claims cannot be equitably tolled by the date of discovery rule. Plaintiffs repeatedly allege in the amended complaint that until investigative efforts were undertaken in the Fears action, plaintiffs had no factual basis to allege claims. (1Í11103, 124, 135.) However, plaintiffs undermine themselves when they simultaneously allege that as early as 1980, the standard model contract disavowed that the manager would seek employment for the person being managed, yet models were required to refer all inquiries for their employment to their agencies and the agencies had the exclusive right to book the model. (1Í1I 149, 160.) Indeed, the contract’s denial of employment services prompted a model to so challenge that which plaintiffs say they could not until the Fears discovery. (If 150.) “[M]ere ignorance or lack of discovery of the wrong is not sufficient to toll the Statute of Limitations.” (General Stencils v Chiappa, 18 NY2d 125, 127 [1966].) Moreover, if models were unaware of DCA licensing requirements, then the modeling agencies themselves gave the models a clue when the standard contract was changed to explicitly deny the agency’s obligation to be licensed. (11161.)
However, plaintiffs can rely on a continuing violation theory to toll the running of the statute of limitations. Plaintiffs argue *361 that defendants’ misrepresentations concerning their status as employment agencies in violation of the General Business Law continue today. The doctrine will toll the limitations period to the date of the commission of the last wrongful act where there is a series of continuing wrongs. (Neufeld v Neufeld, 910 F Supp 977, 982 [SD NY 1996].) “[I]t may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.” (Selkirk v State of New York, 249 AD2d 818, 819 [3d Dept 1998] [doctrine did not apply to State’s seizure of plaintiffs property; Court rejected plaintiff taxpayer’s argument that she continued to suffer effects of property seizure].) Under the doctrine, a continuing violation occurred each time a landlord collected an illegal rent (78/79 York Assoc. v Rand, 175 Misc 2d 960 [Civ Ct, NY County 1998], affd 180 Misc 2d 316 [App Term, 1st Dept 1999]) and each time a debtor defaulted on a loan, where the creditor failed to accelerate the loan. (Phoenix Acquisition Corp. v Campcore, Inc., 81 NY2d 138 [1993].) Likewise, here each time plaintiffs paid defendants more than the statutory 10% fee, defendants would be in violation of article 11.
For the same reasons, the article 11 claim in the second cause of action is not time-barred.
Finally, however, the court is constrained to dismiss the action because none of the remaining named plaintiffs allege a relationship with any of the remaining nonsettling defendants. Plaintiffs may not rely on unidentified class members. (Tegnazian v Consolidated Edison, 189 Misc 2d 152, 156 [Sup Ct, NY County 2000], appeal withdrawn 283 AD2d 1034 [1st Dept 2001].) By plaintiffs’ failure to address this issue, the court can only infer that plaintiffs concede it.
Therefore, the defendants’ joint motion to dismiss is granted and the action is dismissed against: Joseph Hunter; Marion Smith; Company Models; Michael Flutie; Robert Flutie; ID Model Management; Paolo Zampolli; George Gallier; New York Models, also known as New York Model Management; Diva Entertainment; T Model Management; Women Model Management; Paul Rowland; and Q Model Management, also known as Que Model Management, the nonsettling defendants who participated in the joint motion to dismiss. It is unnecessary to address the remaining defendants’ individual motions to dismiss. The action continues against: Karin Models LLC; JeanLuc Brunei; Metropolitan Model Agency USA, Inc.; Metropolitan Models Paris; Thomas Zeumer; and Michel Levaton, who have not settled and have not moved to dismiss.
*362 Afterword
A jury is not likely to ever hear the important issues of whether defendants are “employment agencies,” and thus subject to General Business Law article 11, as plaintiffs assert, or are subject to the “incidental booking exception,” as defendants contend. The Legislature and Governor take issue with litigation expenses incurred by modeling agencies in this and the federal action initiated by models against modeling agencies for allegedly taking advantage of the models. They focus on the confusion over the term “personal manager,” and overlook the serious allegations of institutional predation made by the models against the modeling agencies. Article 11 is simply intended to protect vulnerable employees from more powerful and unscrupulous employers: a protection which has been afforded New York’s employees since 1904. It is a “one-size-fits-all” statute which does not apparently fit the modeling industry. However, the proposed bill creates opportunities for abuse in other areas of the entertainment business, as recognized by Governor Pataki’s veto.
Perhaps the solution is not to modify the “employment agency” statute by exempting modeling agencies and thus leaving models unprotected, but to enact a modeling agency statute which prohibits the abuses which are abhorred by all, especially the reputable modeling agencies which, according to IMG’s memorandum in support of A 8381-A/S 5602, generate $250 million in business annually in New York City. With his veto, Governor Pataki directs his staff to work with drafters and the industry to find alternatives to the flawed proposed bill. Drafters would be wise to look to the settlement in the Fears federal action wherein each settling modeling agency agreed to (1) disclose all compensation received by it on all bookings, including service charges, mother agent fees, the gross fee received for booking and any other charge or deduction; (2) use clear contracts which disclose all compensation terms and practices; and (3) use contracts that are not automatically renewable. (Fears v Wilhelmina Model Agency Inc., 2005 WL 1041134, *2, 2005 US Dist LEXIS 7961, *5 [SD NY, May 5, 2005].) Finally, article 11, as well as any statute enacted to address the modeling industry, should clearly indicate that an employee may seek a refund under General Business Law § 186 without requesting assistance from the DCA. In these times of significant budgetary constraints on government agencies, it seems obvious that just as an individual may rely on article 11 defensively, an indi *363 vidual ought to be able to recover an excessive fee from either a licensed or unlicensed employment agency.
Accordingly it is ordered that motions 3 and 4 are denied as moot without prejudice to renewal on five days’ notice; and it is further ordered that motion 5, dated November 25, 2003, by defendants ID Model Management and Paolo Zampolli, to dismiss the complaint is granted; and it is further ordered that motion 6, brought by order to show cause, dated December 5, 2003, to extend time to answer, move or otherwise respond to plaintiffs’ amended complaint, is granted and defendants’ joint motion to dismiss is submitted as motion 8; and it is further ordered that motion 7, dated December 14, 2003, by defendants NY Model Management, Cory Bautista and Heinz Holba for dismissal of the complaint is granted; and it is further ordered that the Clerk is directed to correct the caption by adding Cory Bautista and Heinz Holba; and it is further ordered that defendants’ motion 8, the joint motion, is granted and the action is dismissed; and it is further ordered that the Clerk is directed to remove Elite Model Management, Inc. from the caption and replace it with Elite Model Management Corp.; and it is further ordered that motion 7 in the Fletcher action is permitted to be withdrawn.

. Elite Model Management, Inc. (EMM Inc.) is listed in the caption of the amended complaint, but Elite Model Management Corp. (EMM Corp.), is not. EMM Corp. is described as a defendant in paragraph 15 of the complaint, but EMM Inc. is not mentioned in the complaint. The settlement agreement in the federal action was signed by Elite Model Management S.A. However, the judgment in the federal action releases claims against Elite S.A. and EMM Corp. The proposed judgment in this action lists EMM Corp. as a released party, but not EMM Inc. As EMM Corp. does not challenge jurisdiction, the Clerk shall be directed to correct the caption by substituting Elite Model Management Corp. for Elite Model Management, Inc.

. The court notes that neither Bautista nor Holba are named as defendants in the caption of the amended complaint. Likewise, Cathy Geraghty and Catherine Pelgat are described in the amended complaint as defendants, but are not listed in the caption. As Holba and Bautista move to dismiss the complaint, but do not challenge jurisdiction or service, the court will direct the Clerk to correct the caption as to them. As to Geraghty and Pelgat, plaintiffs must move to amend the caption.

. Lorex’s request for permission to supplement the pending motion to object to defective service is denied without prejudice to filing a proper motion.

. The eighth cause of action appears on page 53 of the amended complaint and is incorrectly designated as the “sixth” cause of action.

. In addition to being misnumbered, the eighth cause of action lists the defendants as the Ford defendants, while the parenthetical states that the claim is against the Wilhelmina defendants and is brought by the Wilhelmina plaintiffs.

. Fletcher v Elite Model Management Corp.; Elite Model Management S.A.; Elite Premier; Gerald Marie; John Casablancas; Alain Kittler; Monique Pillard; Advertex Communications, Inc.; Macy’s East, Inc. and Federated Group Inc. (Index No. 100459/04). According to plaintiffs’ counsel Olav Haazan’s October 11, 2004 affidavit, as part of the Fears settlement, Fletcher dismissed without prejudice her claims against Advertex, Macy’s East and Federated.

. In motion 7 in the Fletcher action, on August 16, 2004, defendants Gerald Marie and Alain Kittler moved (1) pursuant to CPLR 3211 (a) (8) for improper service; (2) to stay the action based on the Bankruptcy Code and the filing of bankruptcy by Elite; and (3) to stay the action for the same reasons argued by Casablancas. According to the court’s computer, and consistent with a December 9, 2004 letter from counsel for Kittler and Marie, this motion was withdrawn on December 10, 2004. Nonetheless, the motion appears in the court’s computer system as undecided. Accordingly, that motion is hereby permitted to be withdrawn and the Clerk of the Court is directed to mark the court’s records accordingly.

. The 33 settling defendants are: Boss Models, Inc.; David Bosnian; Click Model Management, Inc.; Joseph Grill; Frances Grill; Allan Mindel; Ford Models, Inc.; Gerard W Ford; Eileen Ford; Mary Katherine Ford; Images Management; Heinz Vollenweider; IMG Models, Inc.; IMG Worldwide, Inc. (sued here as International Management Group Inc.); Next Management Co. (sued here as Next Management Corp.); Wilcor Group; Claxon Inc.; Partnership Holding; Faith Kates; Joel Wilkenfeld; Wilhelmina International, Ltd.; Wilhelmina Models, Inc.; Marilyn Model Management Inc.; Marilyn Gauthier; Robert Kreusler; Creation Management LLC; Brad Krassner; Krassner Family Investments Limited Partnership (sued here as the Krassner Family Foundation); and Barbara Lantz. Plaintiffs also agreed not to pursue their claims against Marion Smith and Joseph Hunter in this matter for their conduct during their employment at Ford. However, their claims continue against Smith and Hunter, as president of New York Models and owner of Karin Models, respectively. In their June 21, 2004 letter, plaintiffs informed the court they would be moving to sever or stay this matter, but no such motion has ever been filed. Plaintiffs also advised the court by letter that they were withdrawing their claims against defendants Company Models and MFME Model Management Company Ltd.

. According to plaintiffs’ June 20, 2005 letter, they include: Elite Model Management S.A.; Elite Group S.A.; Gerald Marie; John Casablancas; Alain Kittler; One Model Management; Scott Lipps, Monique Pillard; Mary Ann D’Angelico; Christian Larpin; and Douglas Asch. The court notes that neither D’Angelico nor Larpin are defendants in this action.

. The letter was signed by defendants Men/Women Model Management, Paul Rowland, One Model Management, Scott Lipps, ID Model Management, Paolo Zampolli, Robert Flutie, T Model Management, Q Model Management, New York Model Management, Heinz Holba, Cory Bautista, Marion Smith and George E Gallier. By letter dated April 25, 2005, Joseph Hunter joined the April 14, 2005 letter.

. Plaintiffs’ first letter dated June 15, 2005 contained a different list of remaining defendants.

. In addition, the court has not received any notice of settlement regarding: Elite Model Management, Inc., Lorex A.G., Dieter Esch, Natasha Esch, Ana-Gaby Esch and Jean-Luc Brunei. Q Model Management, also known as Que Model Management, does not appear on plaintiffs’ list of remaining non-settling defendants, but Q signed defendants’ April 14, 2005 letter. Q also joined in defendants’ joint motion to dismiss, motion 8.