OPINION OF THE COURT
Michael D. Stallman, J.
Defendants Steven Edward Herz, Carol Perry and IF Management, Inc. move for an order, pursuant to CPLR 3211 (a) (2) and (7) or in the alternative pursuant to CPLR 3212, to dismiss plaintiffs first, fifth, sixth and seventh causes of action of the verified complaint and to bar plaintiff from asserting any defense to IF Management, Inc.’s counterclaim based upon article 11 of the General Business Law. At issue is whether article 11 of the General Business Law affords a private right of action, i.e., whether it impliedly gives individuals capacity to sue for civil claims based on article 11 of the General Business Law.[1]
Statement of Facts
On August 26, 2002, plaintiff Randi Rhodes, also known as Randi Robertson (Rhodes), the host of a nationally syndicated radio talk show, entered into a personal management agreement (agreement) with defendant IF Management, Inc., a New York corporation with offices in midtown Manhattan. Defendants Steven Edward Herz and Carol Perry were allegedly employed by IF Management at the time of the agreement and allegedly provided services to Rhodes. The terms of the agreement stated that IF Management would be Rhodes’s “sole representative in television, cable, and radio and would assist in the planning, development and achievement of Rhodes’s career goals.” (Herz affidavit, exhibit A at 1.) The agreement was for a period of three years and Rhodes was required to give written notice of termination at least 90 days prior to the date of expiration of the agreement on August 26, 2005. (Id.) Upon the expiration or termination of the agreement, IF Management reserved the right to continue to be paid the commission rate of 10% of gross income for the balance of Rhodes’s “then-in-effect employment *724 contract... as well as for any other employment arising out of contracts or negotiations made or conducted during the term” of the agreement between Rhodes and IF Management. (Id. at 2.) A clause in the agreement states that IF Management functions solely as a personal manager and neither as plaintiffs attorney nor as an employment agency. (Id.) On June 10, 2005, plaintiff sent written notice to terminate the agreement once it expired on August 26, 2005. (Herz affidavit, exhibit B.)
Allegations
On August 11, 2005, plaintiff filed a summons with notice in the Supreme Court of the State of New York, County of New York. On October 3, 2005, Rhodes filed an amended summons and verified complaint alleging eight causes of action. Defendants filed a verified answer to the complaint and verified reply in which defendants counterclaimed based on breach of contract. This motion, filed on September 1, 2009, is based on plaintiffs first, fifth, sixth and seventh causes of action of the verified complaint.
In the first cause of action of the verified complaint, plaintiff alleges that defendants’ conduct in seeking out employment opportunities for plaintiff constituted acting as an employment agency within the meaning of General Business Law § 171. (Rosen affirmation, exhibit B.) Plaintiff asserts that defendants are not licensed by the New York City Department of Consumer Affairs as required by General Business Law § 172. (Id. 11 10.) Based on the allegation that defendant IF Management was acting as an unlicensed employment agency, plaintiff claims that the agreement is void as against public policy. (Id. H 39.)
In the fifth cause of action of the verified complaint, plaintiff alleges that defendants breached their fiduciary duty to plaintiff by: “(a) misrepresenting to Plaintiff her right to discuss and seek employment opportunities with other employers; and (b) failing to reveal that the Defendants were and are not licensed to act as employment agencies under New York Law, and thus were unlawfully engaging in the procurement of employment.” (Id. 11 62.)
In the sixth cause of action of the verified complaint, plaintiff alleges that because defendants were operating as unlicensed employment agents, the contracts entered into by them are unenforceable. (Id. 11 72.) Plaintiff alleges that defendants were unjustly enriched and that she is “entitled to an award of damages equal to the fees that she claims defendants have unlawfully retained.” (Id. 11 73.)
*725 In the seventh cause of action of the verified complaint, plaintiff alleges that “defendants charged an unlawful fee in connection with their services . . . and have wrongfully made a substantial profit at her expense.” {Id. 1i 76.) Plaintiff claims “defendants were unjustly enriched . . . and seeks defendants to account to plaintiff for their profit during the contract period.” {Id. 1i 77.)
Defendant IF Management counterclaims against Rhodes and alleges that Rhodes owes IF Management a 10% commission rate on the gross income earned by her from all sources covered by the agreement. (Verified answer 11 23.) IF Management claims that, after Rhodes terminated the agreement, she stopped making commission payments although the agreement states that IF Management should “continue to be paid for the balance of her then in effect employment contract, including all renewals, substitutions, extensions, modifications, and renegotiations as well as from any other employment arising out of contracts or negotiations made or conducted during the term of the Agreement.” {Id.) In reply, plaintiff denied the allegations of defendants’ counterclaim. The verified reply does not assert any affirmative defenses.
At issue here is whether private individuals may assert affirmative civil claims, such as plaintiff’s first, fifth, sixth and seventh causes of action, based on violations of article 11 of the General Business Law.
Statutory Framework
Article 11 of the General Business Law sets forth a comprehensive regulatory scheme applicable to all employment agencies in New York State. (General Business Law § 170.) An employment agency is defined, in part, as “any person (as hereinafter defined) who, for a fee, procures or attempts to procure: (1) employment or engagements for persons seeking employment or engagements, or (2) employees for employers seeking the services of employees.” (General Business Law § 171 [2] [a].) For the purposes of article 11, a person is defined as “any individual, company, society, association, corporation, manager, contractor, subcontractor, partnership, bureau, agency, service, office or the agent or employee of the foregoing.” (General Business Law § 171 [7].)
Article 11 requires that all employment agencies in the State of New York obtain a license from the “commissioner.” (General Business Law § 172.) According to section 171, the term com *726 missioner in the City of New York refers to the Commissioner of Consumer Affairs of the City of New York. (General Business Law § 171 [1].) Persons operating an employment agency are required to pay a license fee according to the fee schedule provided in article 11 and applicants are required to post a bond, through a surety or sureties, with the Commissioner. (General Business Law § 177 [1].) Section 177 (2) of the General Business Law provides:
“The bond . . . shall be conditioned that the person applying for the license will comply with this article, and shall pay all damages occasioned to any person by reason of any misstatement, misrepresentation, fraud or deceit, or any unlawful act or omission . . . made, committed or omitted in the business conducted under such license, or caused by any other violation of this article in carrying on the business for which such license is granted. The bond also shall be conditioned that the person applying for the license shall pay the commissioner all fines imposed pursuant to section one hundred eighty-nine of this article.”
Further, section 178 of the General Business Law provides the procedure for claims or lawsuits against licensed persons:
“All claims or suits brought in any court against any licensed person may be brought in the name of the person damaged upon the bond deposited by such licensed person as provided in section one hundred seventy-seven and may be transferred and assigned as other claims for damages in civil suits. The amount of damages claimed by plaintiff, and not the penalty named in the bond, shall determine the jurisdiction of the court in which the action is brought. The commissioner may institute a suit against the bond on behalf of any person damaged. Where such licensed person has departed from the state with intent to defraud his creditors or to avoid the service of a summons in an action brought under this section, service shall be made upon the surety in the manner provided for service of a summons. A copy of such summons shall be mailed to the last known post office address of the residence of the licensed person and the place where he conducted such employment agency, as shown by the records of the commissioner.”
According to article 11, a fee refers to “anything of value . . . for any service, or act rendered or to be rendered by an employ *727 ment agency, including but not limited to money received by such agency or its emigrant agent which is more than the amount paid by it . . .on behalf of any applicant for employment.” (General Business Law § 171 [3].) Any fee, excessive to that which is allowed by article 11, which is received or retained by an employment agency must be returned within seven days of demand for its return. (General Business Law § 186 [1].) The article also governs the return of fees when an applicant fails to report to a position or is terminated. (General Business Law § 186 [2]-[4].)
Article 11 of the General Business Law expressly provides that the provisions of the article shall be enforced, in the City of New York, by the Commissioner of Consumer Affairs.[2] (General Business Law § 189 [1].) The Commissioner is authorized to search necessary premises or records in order to ensure that a person licensed to conduct business as an employment agency has not violated any provision of the article. (General Business Law § 189 [2].) The Commissioner has the authority to make reasonable administrative rules. (General Business Law § 189 [3].) A complaint against a licensed employment agency shall be made to the Commissioner. (General Business Law § 189 [4].) The Commissioner may hold a hearing, subpoena records or witnesses, and render a decision. If the Commissioner decides that the licensed employment agency has violated a provision of article 11, “the commissioner may suspend or revoke the license of such licensed person and/or levy a fine against such licensed person for each violation not to exceed five hundred dollars.” (General Business Law § 189 [5].) The decision to suspend or revoke a license results in a three-year waiting period for the application of another license and is subject to judicial review. (Id.) Criminal penalties for the violation of article 11 are governed by section 190 as follows:
“Any person who violates and the officers of a corporation and stockholders holding ten percent or more of the stock of a corporation which is not publicly traded, who knowingly permit the corporation to violate sections one hundred seventy-two, one hundred seventy-three, one hundred seventy-six, one hundred eighty-four, one hundred eighty- *728 four-a, one hundred eighty-five, one hundred eighty-five-a, one hundred eighty-six, or one hundred eighty-seven of this article shall be guilty of a misdemeanor and upon conviction shall be subject to a fine not to exceed one thousand dollars, or imprisonment for not more than one year, or both, by any court of competent jurisdiction. The violation of any other provision of this article shall be punishable by a fine not to exceed one hundred dollars or imprisonment for not more than thirty days. Criminal proceedings based upon violations of these sections shall be instituted by the commissioner and may be instituted by any persons aggrieved by such violations.”
Discussion
Defendants Herz, Perry and IF Management, Inc. move to dismiss several causes of action in plaintiff Rhodes’s verified complaint and to prevent Rhodes from asserting any defense to IF Management, Inc.’s counterclaim based upon article 11 of the General Business Law. Defendants represent that IF Management operated as a personal management firm and not as an employment agency, and is not required to be licensed under article 11 of the General Business Law. (Herz affidavit 11 3.) Defendants further state that, even if IF Management was operating as an unlicensed employment agency, Rhodes may not sue because article 11 does not provide for a private civil right of action and therefore this court does not have subject matter jurisdiction to hear this case. (Defendants’ mem of law at 2.)
At issue is whether article 11 of the General Business Law, which governs all employment agencies in New York, provides for a private civil right of action for individuals to sue for civil remedies based on violations of the statute. Defendants move to dismiss several causes of action in the plaintiff’s verified complaint because defendants claim that these allegations are based on article 11, which defendants contend does not provide a private right of action for plaintiff to sue for civil remedies.
Shelton v Elite Model Mgt., Inc. (11 Misc 3d 345 [Sup Ct, NY County 2005, Ramos, J.]) and Masters v Wilhelmina Model Agency, Inc. (2003 WL 145556, 2003 US Dist LEXIS 698 [SD NY 2003, Baer, J.]) are the leading cases that addressed the issue of whether a general private right of action lies for viola *729 tions of General Business Law article ll.[3] Each analyzed the issue differently, and consequently reached opposite conclusions. The Shelton court determined that article 11 provides for a private right of action and that this right is explicit within the provisions of article 11. Masters ruled that there is not a private right of action for civil claims in article 11. Masters determined that article 11 does not provide for an express private right of action, and a private right of action could not be implied in the provisions of article 11.
The federal courts revisited the issue in Columbia Artists Mgt., LLC v Swenson & Burnakus, Inc. (2008 WL 4387808, 2008 US Dist LEXIS 74377 [SD NY 2008, Sand, J.]). The plaintiff, which provided management services for performing artists, sought to recover commissions from a former client for serving as the manager and representative of Ruth Ann Swenson, an opera singer. The client counterclaimed, alleging that the corporation breached the agreement because it was not licensed under article 11 as required by law. Plaintiffs moved to dismiss the counterclaim and to strike the defendant’s affirmative defenses.
Citing Masters, the Columbia court concluded that “there is no article 11 private right of action enabling defendant to bring its counterclaim for repayment of fees and commissions.” (2008 WL 4387808, *8, 2008 US Dist LEXIS 74377, *25.) The Columbia court declined to follow Shelton, stating “Although the Shelton court reasoned that there is an express private right of action . . . , this Court finds that analysis to be unpersuasive.” (2008 WL 4387808, *6, 2008 US Dist LEXIS 74377, *17.)
Like the Columbia court, this court agrees with the analysis and conclusion in Masters and respectfully disagrees with Shelton.
A.
In Shelton v Elite Model Mgt., Inc., the plaintiffs alleged that the defendants, which were modeling agencies, violated the General Business Law by charging models excessive fees in violation of the employment agency statute. The defendants moved to dismiss the plaintiffs’ causes of action that were based on, or derivative of, article 11 of the General Business Law.
The Shelton court determined that article 11 expressly provides for a private right of action. (Shelton, 11 Misc 3d at *730 356.) Looking at General Business Law §§ 177 and 178, the bond requirement provisions, the Shelton court determined that the language of section 178 expressly provides for a private right of action against a licensed employment agency for violation of the bond requirements.[4] The Shelton court noted that, in 1975, the Legislature enacted a comprehensive overhaul of article 11, but did not specifically enact a private right of action to the enforcement provisions of article 11. The Shelton court did not conclude that the omission was telling, reasoning, “It was unnecessary since General Business Law § 178 already provided for one, albeit limited.” (Id.) The Shelton court pointed out that, in 1975, the Legislature added to section 178 that “the commissioner may institute a suit against the bond.” (Id.)
The Shelton court also ruled that the general private right of action against licensed employment agencies also extended to a nonlicensed employment agency as well. The court looked to General Business Law § 186, which requires a refund for excessive fees within seven days of demand. The Shelton court noted that General Business Law § 186 applied to “any employment agency,” and concluded that it was therefore not limited to licensed employment agencies. (Id. at 357.) The Shelton court also noted that General Business Law § 186 does not specify who can make a demand for a refund of excessive fees, and cited cases where the statute was successfully invoked as an affirmative defense to collection cases by unlicensed employment agencies against their own employees. (See Pine v Laine, 36 AD2d 924 [1st Dept 1971]; Friedkin v Harry Walker, Inc., 90 Misc 2d 680 [Civ Ct, NY County 1977]; Dorrell Assoc. v Urb Prods. Corp., 67 Misc 2d 716 [Civ Ct, NY County 1971].)[5]
*731 This court disagrees with Shelton’s analysis. First, Shelton acknowledged that General Business Law § 178 provided for a private right of action, “albeit limited.” (Shelton, 11 Misc 3d at 356.) And yet, the Shelton court expanded the limited private right of action in section 178 to a general right of action for all the provisions of article 11 of the General Business Law. This runs contrary to a familiar rule of statutory construction, ex-pressio unius est exclusio alterius, that is, “where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240.) By explicitly providing for a limited civil right of action on the bond, the Legislature must have intended to exclude a private civil right of action from the rest of article 11. Had the Legislature intended to provide individuals with a general private right of action and the capacity to sue under the circumstances alleged here, it would have provided for this right expressly in either General Business Law § 189,* **[6] the general enforcement provision for any violation of article 11, or in the provision at issue here, General Business Law § 172, which imposes a licensing requirement.
The general private right of action that the Shelton court found is not expressly set forth in any provision of article 11. Because the Shelton court had derived the existence of a general private right of action based on specific sections of article 11, the Shelton court was actually engaging in the analysis of whether an implied right of action under article 11 could be found based on General Business Law §§ 177, 178 and 186. In that regard, Shelton applied its own analytical framework for whether a private right of action could be implied, and did not follow the well-established framework of Sheehy v Big Flats Community Day (73 NY2d 629 [1989]), which Masters followed.
Moreover, Shelton states, “we find Judge Baer’s reasoning for finding that there is no implicit private right of action under *732 General Business Law article 11 to be sound.” (Shelton, 11 Misc 3d at 356.) It does not seem logically possible that a statute construed to provide an express right of action would fail the test for whether a private right of action could be implied from the statute.
In this court’s view, the Shelton court’s reliance on those cases where the unlicensed status of an employment agency is used as an affirmative defense is misplaced. The availability of an affirmative defense to a defendant when sued does not automatically translate to an affirmative right of action to sue as a plaintiff for damages. Therefore, as in Columbia Artists Mgt., LLC v Swenson & Burnakus, Inc., this court finds that a private civil right of action cannot be extrapolated from the cases relied upon in Shelton.[7] B.
In Masters v Wilhelmina Model Agency, Inc., models who worked for modeling agencies in New York brought a class action lawsuit against the modeling agencies, alleging, among other claims, that the modeling agencies charged excessive fees and fixed contract terms. In the fourth cause of action of the complaint in Masters, the plaintiffs alleged that the defendants violated article 11 of the General Business Law. The defendants argued that the court lacked subject matter jurisdiction over the state claims and that the complaint should be dismissed, contending that article 11 does not provide an express or implied private right of action to individuals in civil claims.
As mentioned above, the Masters court concluded that article 11 does not provide an express private right of action because it was not contained in General Business Law § 189, the enforcement provision. {Masters, 2003 WL 145556, **6, 2003 US Dist LEXIS 698, *19 [2003].) Thus, the Masters court considered whether an implied private right of action for violations of article 11 exists, applying a three-prong test:
*733 “To imply a private right of action when not expressly provided by statute, plaintiffs must prove (1) they are members of the class for whose particular benefit the statute was enacted; (2) a private right of action would promote the legislative purpose; and (3) creation of such a right would be consistent with the legislative scheme.” (Masters, 2003 WL 145556, *6, 2003 US Dist LEXIS 698, *19, quoting Sheehy, 73 NY2d 629, 633 [1989], supra.)
The Masters court stated, “I have no doubt that the first and second prongs of the Sheehy test are satisfied. . . . The only outstanding concern then is whether plaintiffs meet the third prong of the Sheehy test.” (2003 WL 145556, *6, 2003 US Dist LEXIS 698, *20-21.)
In Masters, plaintiffs argued that the existence of an individual’s right to institute criminal proceedings through section 190 of the General Business Law suggests that there is a legislative intent for a private right of action for individuals to enforce civil remedies. However, quoting Matter of Carrube v New York City Tr. Auth. (291 AD2d 558 [2d Dept 2002]), Masters stated that “if a provision or body of law has a potent official enforcement mechanism, the Legislature contemplated administrative enforcement and [thus] there is no private right of action.” (2003 WL 145556, *6, 2003 US Dist LEXIS 698, *21.) In Masters, plaintiffs suggested that the Department of Consumer Affairs was not a potent law enforcement mechanism. The Masters court concluded that several amendments made to article 11 suggest that the Legislature did not intend to provide a private right of action. The Masters court ruled that “[t]ogether, sections 189 and 190 set forth a comprehensive scheme by which Article 11 is to be enforced” and granted the defendants’ motion to dismiss the plaintiffs’ fourth cause of action. (Masters, 2003 WL 145556, *8, 2003 US Dist LEXIS 698, *30.)
Concurring with Masters, the Columbia court determined that in analyzing the third prong — whether allowing a private right of action is consistent with the legislative scheme — the court must explore whether “the statute carries its own potent legal enforcement mechanism.” (2008 WL 4387808, *5, 2008 US Dist LEXIS 74377, *15, quoting Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 40 [1999].) In Uhr, the Court of Appeals concluded that no implied private right of action exists where the statute carries its own potent official enforcement mechanism. The Uhr Court found that allowing an implied *734 private right of action regarding a statute, which requires school authorities to examine students of certain ages for scoliosis at least once in a school year, would be inconsistent with the legislative scheme because the Legislature clearly contemplated administrative enforcement of the statute by charging the Commissioner of Education with the duty to enforce the statute. {Uhr, 94 NY2d at 33.)
Here, the court has little doubt that plaintiff can satisfy the first and second prongs of the Sheehy test, as Judge Baer concluded in Masters. Plaintiff, a radio talk show personality who sought the representation of defendant, a personal management firm, is similar to the models who sought modeling agencies to secure employment for them. As Judge Baer stated, “ ‘it cannot be denied that recognition of a private right of action for civil damages would, as a general matter, advance the legislative purpose’ and enable more vigorous enforcement of Article 11.” CMasters, 2003 WL 144456, *6, 2003 US Dist LEXIS 74377, *20.) This court agrees with Masters that the existence of a comprehensive enforcement scheme here precludes a general private right of action for a violation of article 11 of the General Business Law. Article 11, through the enforcement section (General Business Law § 189), clearly delegates to the appropriate commissioner the duty to enforce article 11.
It is clear that General Business Law § 189 provides a comprehensive enforcement mechanism for the regulation of licensed employment agencies. The provision grants the Commissioner broad enforcement powers such as the power to conduct investigations, inspect records, and subpoena witnesses to determine whether a person who has been granted a license has violated the statute. (General Business Law § 189 [2].) In addition, complaints against licensed persons shall be made to the Commissioner. (General Business Law § 189 [3].) Thereafter, the Commissioner has the authority to hold a hearing to determine whether the license of the person should be suspended or revoked. (General Business Law § 189 [5].) Parallel civil proceedings might interfere with administrative enforcement.
The General Business Law also applies to businesses that constitute unlicensed employment agencies. For unlicensed employment agencies, a violation of General Business Law § 172, the licensing requirement, constitutes a misdemeanor, punishable by a fine or imprisonment, or both, upon conviction. (General Business Law § 190.) Although article 11 of the General Business Law does not appear to provide as many enforce *735 ment penalties against unlicensed employment agencies as compared with licensed employment agencies, it grants additional powers to the New York City Department of Consumer Affairs, which enforces the requirements of article 11 in the City of New York. Section 20-105 (b) of the Administrative Code of the City of New York grants the Department of Consumer Affairs additional powers with respect to unlicensed activities:
“1. to impose fines upon any person in violation of subdivision a of this section of one hundred dollars per violation per day for each and every day during which such person violates such subdivision.
“2. to order any person in violation of subdivision a of this section immediately to discontinue such activity at the premises on which such activity is occurring.
“3. to order that such premises on which such activity is occurring be sealed, provided that such premises are primarily used for such activity.
“4. to order that any devices, items or goods sold, offered for sale available for public use or utilized in the operation of a business and relating to such activity for which a license is required but has not been obtained pursuant to the provisions of chapter two shall be removed, sealed or otherwise made inoperable.”
Not only is the Department of Consumer Affairs vested with these broad enforcement powers; it has exercised these enforcement powers against unlicensed employment agencies on an ongoing basis, e.g., assessing fines of $100 per day of unlicensed activity, as evidenced by the corpus of the Web site of e-published city decisions. (See e.g. Department of Consumer Affairs v People Helping People, violation No. PL 1021215, available at http:// archive.citylaw.org/dca/2009/JANUARY/PL1021215.doc [updated Jan. 12, 2009; accessed Mar. 2, 2010]; Department of Consumer Affairs v M & M Employment Services Corp., violation No. PL 1060050, available at http://archive.citylaw.org/dca/2009/ SEPTEMBER/PL1060050.doc [updated Sept. 21, 2009; accessed Mar. 2, 2010]; Department of Consumer Affairs v Agenda de Empleo E & G, violation No. PL 1060655 available at http:// archive.citylaw.org/dca/2009/AUGUST/PL1060655.doc-201001-05 [updated Aug. 31, 2009; accessed Mar. 2, 2010]; Department of Consumer Affairs v Corporation D/B/A China & Japan Empl. Agency, violation No. PL 1040146, available at http:// archive.citylaw.org/dca/2005/PL1040146.doc [updated June 7,
*736 2005; accessed Mar. 2, 2010]; Department of Consumer Affairs v Models, violations Nos. PL 1002795, LL 5006202, available at http://archive.citylaw.org/dca/2003/PL1002795.doc [updated Apr. 10, 2003; accessed Mar. 2, 2010]; Department of Consumer Affairs v NYC People, violation Nos. PL 1005235, LL 5010914, http://archive.citylaw.org/dca/2003/LL5010914.doc [updated Mar. 27, 2003; accessed Mar. 2, 2010].) Based on these additional powers given to the Department of Consumer Affairs, the court concludes that a potent official enforcement mechanism exists.
Therefore, this court finds that no general private right of action for civil remedies exists for violations of article 11, including General Business Law § 172.
Conclusion
Accordingly, it is hereby ordered that the motion of defendants to dismiss the first, fifth, sixth and seventh causes of action in the plaintiffs verified complaint is granted, without prejudice to plaintiff asserting defenses to defendants’ counterclaims based on the plaintiff’s allegations that defendant IF Management, Inc. is an unlicensed employment agency and may not collect the sums it alleges plaintiff owes.

. The papers submitted on the motion and the cases relied upon by plaintiff in Shelton v Elite Model Mgt., Inc. (11 Misc 3d 345 [Sup Ct, NY County 2005]) raise another issue, not yet ripe for determination: Whether defendants operated as an unlicensed employment agency and the applicability of the well-established New York common-law principle that an unlicensed employment agency is barred from affirmatively suing to recover commissions allegedly due on the contract, as asserted by defendants in the counterclaim here. Those questions cannot be decided on this motion.

. “Deputy commissioners, or other officials designated to act on behalf of the commissioner, may conduct hearings and act upon applications for licenses, and revoke or suspend such licenses, or levy fines.” (General Business Law § 189 [5].)

. Masters was the federal class action related to Shelton. (See Shelton, 11 Misc 3d at 350.)

. Section 177 requires licensed employment agencies in the City of New York to file a bond, through a surety or sureties, with the Commissioner of Consumer Affairs. Section 178 provides that “[a]ll claims or suits brought in any court against any licensed person may be brought in the name of the person damaged upon the bond deposited by such licensed person.”

. In Pine v Laine, the plaintiff sued the defendant in the amount of $35,000 to recover a fee for a recording contract that plaintiff arranged between defendant and a record company. The Pine court concluded that plaintiff did not fall within any exception of article 11, and could not recover because plaintiff was not licensed as an employment agency as required.
In Dorrell Assoc. v Urb Prods. Corp., plaintiff, an executive placement firm, sued to recover $9,000 as compensation for finding the defendant a director of marketing. The court ruled that when plaintiff accepted a fee, it became an employment agency as defined in the statute and was required to obtain a license. The Dorrell court dismissed the complaint and ruled that the plaintiffs claim for compensation was barred. CDorrell, 67 Misc 2d at 718.)
*731 In Friedkin v Harry Walker, Inc., the court held that a contract between defendant, a booking agent, and plaintiff, a movie director, for lecture engagements was unenforceable because the booking agent did not obtain a license.

. The Masters court concluded that article 11 does not provide an express private right of action because it was not contained in General Business Law § 189, the enforcement provision. (Masters, 2003 WL 145556, *6, 2003 US Dist LEXIS 74377, *17.) However, the lack of an express, general private right of action for article 11 does not necessarily preclude the existence of private rights of action expressly granted for specific statutory provisions, such as General Business Law § 178.

. Columbia Artists Mgt. LLC also determined that “[w]here there is no private right of action for a claim, a party cannot assert that violation as grounds for an affirmative defense,” citing cases involving a private right of action under securities laws. (Columbia Artists Mgt. LLC, 2008 WL 4387808, *8, 2008 US Dist LEXIS 74377, *25 [2008].)
This court does not agree with that determination. As plaintiff and the Shelton court both indicate, many New York cases permitted the violation to be raised as an affirmative defense, based on illegality of a contract. (See e.g. Mandel v Liebman, 303 NY 88 [1951] [rejecting argument that contract between a writer and an attorney who acted as the former’s representative was illegal and void, because the attorney fell within an exception to the licensing requirement of General Business Law § 172].)