Irving Younger, J.
Although New York has regulated its employment agencies for nearly 70 years, the simple and important issue now before me has never been decided. It arises in a suit by Dorrell Associates, an executive placement firm, to recover $9,000 from Urb Products Corporation by way of compensation for finding Urb a director of marketing. Dorrell concededly possessed no employment agency license. In consequence, Urb argues, Dorrell may recover nothing; to which Dorrell responds that this transaction was exempt from any licensing requirement. The decision turns, not upon the facts, which are undisputed, but upon the meaning to be given subdivision 3 of section 171 of the General Business Law (art. 11).
Every employment agency must have a license (General Business Law, § 172) and submit to various restrictions on its activities (General Business Law, §§ 176-189). Should an employment agency presume to do business without a license, it is subject to criminal penalties (General Business Law, § 190) as well as to the civil sanction of losing its right to compensation for services rendered. (Russell-Stewart v. Birkett, 24 Misc 2d 528, app. dsmd. 12 A D 2d 757.)
Our initial inquiry, then, and in this case the ultimate one, is what constitutes an employment agency. The Legislature has furnished precise and painstaking definitions. An “ employment-agency ” is someone who procures employment for others (General Business Law, § 171, subd. 2) but does not include anyone who, on behalf of employers, procures employment for executives and who in no instance charges the executive a fee. (General Business Law, § 171, subd. 2, par. e, cl. [3].) A “ fee ” is “ anything of value * * * including but not limited to money received by such agency which is more than the amount paid by it for transportation, transfer of baggage, or board and lodging on behalf of any applicant for employment.” (General Business Law, § 171, subd. 3.)
In sum, an executive placement firm may secure employment for men like the director of marketing Dorrell found for Urb, and need have no license so long as it charges the executive nothing beyond reimbursement of the specified expenses.
In this instance, Dorrell charged the executive $41.20, representing reimbursement of $8.50 spent by Dorrell on telephone calls, $14 on stenographic services, $17.50 on entertainment, and $1.20 on postage. None of these items falls within the *718 statute’s particularization of what may be reimbursed without turning the payment into a “ fee ”. Still, the amounts involved are trifling. Hence the issue: should subdivision 3 of section 171’s definition of “ fee ” be read so strictly that even the slightest departure from its terms will destroy the licensing exemption? Having in mind both the words and purpose of the statute, I hold that it should.
The words could not be plainer. A ‘1 fee ’ ’ is anything received by the agency beyond reimbursement ‘ ‘ for transportation, transfer of baggage, or board and lodging on behalf of any applicant for employment.” The statute adds no et cetera. Rather, it recites those specific reimbursements — A, B, C, and nothing else —which will not be deemed a fee. Dorrell received reimbursements which were neither A nor B nor C, and hence, I conclude, constituted a fee. This kind of refusal to find in the statute what the Legislature did not put there is no stranger to our law, where it goes by the name, “ expressio unius est exclusio alterius”. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 240.)
The statute’s intent is equally clear. TJnsupervised employment agencies victimize the poor and the ignorant. The data which prove it are found in Justice Brandéis’ dissent in Adams v. Tanner (244 U. S. 590, 597) and in Abbye Employment Agency v. Robinson (166 Misc. 820, 824-825). So employment agencies must be regulated, as indeed they have been virtually everywhere. To be sure, New York’s statute exempts from regulation those executive placement firms which take no fee from the person placed. But since the requirement of a license was designed to ameliorate an evil, the exemption should be confined to the cases enumerated by the Legislature as entitled to it. A loose reading would simply reopen doors the statute sought to close. This could not have been the intention of those who wrote the law.
When it accepted $42.10 from this executive, therefore, Dorrell received a fee within the meaning of subdivision 3 of section 171 of the General Business Law. Thus it became an employment agency as defined in subdivision 2 of section 171, and was required to have a license. Since it had none, its claim to compensation for services rendered as an employment agency is , barred. Complaint dismissed.