Leonard N. Cohen, J.
Does article 11 of the New York State General Business Law, requiring employment agencies to be licensed, apply to a booking agent who secures lectures and engagements for a client who is a motion picture and theatrical personality? The answer is in the affirmative unless the agent is in the business of managing such a clientele and the seeking of employment is only incidentally involved.
Plaintiff is a well-known theatrical and motion picture personality whose accomplishments include direction of "The French Connection”, "The Exorcist” and the production of the most recent "Oscar” presentation television program. Defendant is a well-known but unlicensed agent in the business of managing, directing and promoting lectures, talks and addresses for various personalities, including four former candidates for President and Vice-President and several United States Senators, Representatives and other newsworthy per *681 sonalities. It is noted that the plaintiff is in the entertainment business as a film director and his lectures involve this medium.
Underlying this motion by plaintiff for a summary judgment are two causes of action of an amended complaint. The first seeks the return of commissions held by the defendant amounting to $4,743.32, on grounds that the contract between the parties is invalid as defendant is an unlicensed employment agency in contravention of section 172 of the General Business Law and, in any event, the fee is in excess of the amount allowed by statute.
The second cause of action seeks $2,450 as his share of fees allegedly wrongfully retained, for three lectures.
The defendant denies liability and counterclaims for lost earnings allegedly due to plaintiff’s failure to keep 20 lecture engagements (of 23 booked) and for irreparable injury to his reputation. Defendant admits to being unlicensed and to the retention of a portion of plaintiff’s share of fees, but claims exemption from the statutory licensing requirement.
The parties executed a contract on June 13, 1972 whereby plaintiff agreed to employ defendant as his sole and exclusive agent for a stated purpose: to negotiate and secure engagements and to book, manage and arrange all his lectures, talks and addresses. Defendant had discretion as to plaintiff’s gross fees and was to retain 30% of the gross receipts from any and all lectures, talks and addresses plaintiff undertook, including those generated by invitations made directly to plaintiff. Other clauses show that defendant’s obligations included the billing and collection of all fees, in its own name, from any and all lectures, talks and addresses given by plaintiff. It was also agreed that defendant would seek to prevent the unauthorized use of plaintiff’s name or photograph in the advertising or listing of any other bureau, manager or agent and that plaintiff would join in legal proceedings necessary to effectuate that purpose, at no expense to plaintiff. A further provision obligated plaintiff to provide photographs, press releases and brochures and permitted defendant to take certain steps at plaintiff’s expense to obtain some of those materials when unavailable to plaintiff.
Section 172 of the General Business Law provides that "No person shall * * * own, operate or carry on any employment agency unless such person shall have first procured a license *682 * * * in the city of New York such license shall be issued by the commissioner of consumer affairs”.
Under section 171 (subd 2, par d) of the General Business Law an employment agency shall include "any theatrical employment agency”.
Subdivision 8 of section 171 of the General Business Law provides in part that a theatrical employment agency is "any person * * * who procures or attempts to procure employment or engagements * * * or other entertainments or exhibitions or performances” and enumerates several specific types of engagements for which a theatrical engagement, defined in subdivision 9 of section 171 of the General Business Law, may be sought by a theatrical employment agency. However, subdivision 8 of section 171 of the General Business Law specifically exempts from the definition of a theatrical employment agency "the business of managing such entertainments, exhibitions or performances, or the artists or attractions constituting the same, where such business only incidentally involves the seeking of employment therefor ” (Italics added.)
Section 171 (subd 2, par a) of the General Business Law defines an employment agency as "any person * * * who, for a fee, procures or attempts to procure: (1) employment or engagements for persons seeking employment or engagements”.
Section 190 of the General Business Law makes it a misdemeanor to violate, inter alla, the licensing requirements of section 172 of the General Business Law.
It is readily apparent that defendant is a de facto employment agency whose activities require a license unless the exemption under subdivision 8 of section 171 is applicable. The question whether defendant’s business only incidentally involves the seeking of employment as corollary to being a personal manager of plaintiff would ordinarily be a matter of factual determination, and thus not resolved upon summary judgment (Mandel v Liebman, 303 NY 88; Greenfield v Tripp, 10 AD2d 638, mot for rearg and lv to app den 10 AD2d 850; Hyde v Vinolas, 234 App Div 364). It is, however, axiomatic that to defeat a motion for summary judgment, one must lay bare his proofs and present evidentiary facts rather than conclusory allegations of fact or of law (Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255; P. D. J. Corp. v Bansh Props., 29 AD2d 927, affd 23 NY2d 971; Matter of Bank of New York, 43 AD2d 105). Where no significant doubt *683 is raised regarding the existence of a material and triable issue of fact, summary judgment will lie (Philips v Kantor & Co., 31 NY2d 307).
Defendant’s self-serving statements that it is "a business representative” and “not an employment agency which gets job placements for a fee” and the simple denial that it acted as an employment agency when representing plaintiff will not suffice. Nor can the pleadings raise sufficient factual issues. (Indig v Finkelstein, 23 NY2d 728; Hertz Commercial Leasing Corp. v Transportation Credit Clearing House, 64 Misc 2d 910.)
Defendant has failed to submit evidentiary facts with any probative value specifying or describing the performance of its alleged managerial activities. Defendant submits that the contract merits exclusion from the statutory mandate. On the other hand, plaintiff submits an affidavit from his personal manager fully and clearly delineating his managerial functions and responsibilities on behalf of the plaintiff.
The instant contract cannot be characterized as one of management: it is abundantly clear upon a reading that defendant’s obligation is to solicit lecturing engagements for plaintiff, and that any other duties to be performed for plaintiff are incidental thereto. Where ambiguties exist in a contract, they may be resolved on a motion for summary judgment (Rentways v O’Neill Milk & Cream Co., 308 NY 342; 10 NY Jur, Contracts, § 190), but the instant contract needs no resort beyond its four corners to glean its specific intent. It plainly states defendant’s obligation to act as plaintiff’s “sole and exclusive agent to negotiate and secure engagements and book, manage and arrange all * * * lectures, talks and addresses.” Moreover, defendant’s characterization that the general contractual terms, which it drew, constitute a managerial contract cannot overcome the obvious overriding intent and purpose of the agreement and its factual setting securing the most profitable engagements for plaintiff. (See Russell-Stewart v Birkett, 24 Misc 2d 528, app dsmd 12 AD2d 757; Farnum v O’Neill, 141 Misc 555.)
It is, therefore, clear that defendant’s primary, if not sole, obligation was to secure lecture engagements for plaintiff. The fee billing and collection functions were incidental conveniences, perhaps for defendant’s protection but in any event unrelated to the alleged personal management of plaintiff.
The defendant’s argument that the scope of article 11 of the *684 General Business Law is limited primarily to job placements is without merit in view of the express and unequivocal contrary statutory provisions and the cases cited herein.
Defendant is clearly an unlicensed employment agency within section 171 (subd 2, par a) of the General Business Law and the exclusionary provision of subdivision 8 of section 171 of the General Business Law is clearly inapplicable. (See Pine v Laine, 36 AD2d 924, affd 31 NY2d 988; Allen v Brice, 165 Misc 181; Farnum v O’Neill, supra; Meyers v Walton, 76 Misc 510.) Under the foregoing, it is immaterial whether defendant is deemed a theatrical employment agency within subdivision 8 of section 171 of the General Business Law or whether the engagements pursuant to the contract may be deemed as theatrical engagements pursuant to subdivision 9 of the General Business Law. Likewise, whether the fees in accordance with the contract are within legal limits is also immaterial, as the contract is unenforceable.
It is a valid exercise of the police power of the State to regulate and license the business of conducting a private employment agency. (People ex rel. Armstrong v Warden, 183 NY 223.) This is to be distinguished from a licensing requirement for mere revenue raising purposes. (See Williston, Contracts [3d ed], §§ 1766-1769; 8 Encyclopedia NY Law, Contracts, §§ 2417, 2419.) A contract made in violation of such statute is unenforceable. (Carmine v Murphy, 285 NY 413; American Store Equip. & Constr. Corp. v Jack Dempsey’s Punch Bowl, 283 NY 601; Adler v Zimmerman, 233 NY 431; Atkin v Hill, Darlington & Grimm, 15 AD2d 362, affd 12 NY2d 940.)
Subdivision 1 of section 186 of the General Business Law expressly requires the return of any fees wrongfully obtained within one week after demand: "Any employment agency which collects, receives or retains a fee or other payment contrary to or in excess of the provisions of this article, shall return the fee * * * within seven days after receiving a demand therefor.” It would be a mere formalism to require, in consideration of the first cause of action, that a demand be a condition precedent; it is inferred from commencement of the lawsuit. (See Feinberg v Feinberg, 180 Misc 305; L. & Y. Food Prods. Corp. v Delmonte Ice Cream Co., 109 NYS2d 522.) Moreover, the criminal penalty and civil sanctions (see General Business Law, § 190 and Dorrell Assoc. v Urb Prods. Corp., 67 Misc 2d 716; see, also, Russell-Stewart v Birkett, *685 supra) demonstrate a public policy militating against the accrual of benefits to a business being conducted in violation of a licensing requirement pursuant to the State police power. (Cf. Schleimer v Anderson McPherson, NYLJ, April 12, 1976, p 10, col 1; East Coast Moving & Stor. v Flappin, 78 Misc 2d 140.)
In accordance with the foregoing, plaintiff shall have judgment upon both causes of action, and the counterclaims are dismissed as they are not supported by any evidentiary matter, and dismissal is warranted.
As to the first cause of action, the plaintiff personally has not included in his affidavit a statement containing the amount of the commissions retained by the defendant with an itemization of the lectures upon which these are based. Nor has plaintiff included a sworn statement of the amount earned, including the commission withheld, on the second cause of action. Such may be cured by submission of appropriate affidavits upon the settlement of the judgment inclusive of such interest, costs and disbursements as permitted by statute.
Defendant is granted a 20-day stay of execution after settlement of the judgment.