[920 NYS2d 11]

RANDI RHODES, Also Known as RANDI ROBERTSON, Appellant, v
STEVEN EDWARD HERZ et al., Respondents.

First Department, March 22, 2011

## APPEARANCES OF COUNSEL

*John R. Sachs, Jr.*, New York City, and *Gaulin Group PLLC*, New York City (*Robert V. Gaulin* of counsel), for appellant.

*LaRocca Hornik Rosen Greenberg & Blaha LLP*, New York City (*Amy D. Carlin* and *Lawrence S. Rosen* of counsel), for respondents.

## OPINION OF THE COURT

ROMÁN, J.

The issue before us is whether article 11 of the General Business Law, by its terms, provides an express private right of action and whether, in the absence of such an express right, one is nevertheless implied. We hold, and indeed not for the first time, that article 11 does not provide either an express or an implied private right of action against licensed or unlicensed employment agencies or their agents. Accordingly, plaintiff's first, fifth, sixth and seventh causes of action, premised on violations of article 11, were properly dismissed.

According to the complaint,[1] plaintiff, a nationally syndicated radio talk show host, entered into a Comprehensive Employment Agent and Managerial Contract with defendant IF Management, Inc. Prior to the contract's execution, defendant Steven Edward Herz, an employee of IF Management, Inc., represented that he was an employment agent and that IF Management, Inc. could act as plaintiff's employment agent, manager and law firm. Carol Perry was also employed by IF Management, Inc. and, along with the other defendants, acted as plaintiff's employment agent. During the contract's term, defendants discussed and explored employment opportunities for plaintiff. In particular, defendants attempted to negotiate a publishing contract on plaintiff's behalf with Miramax, negotiated a salary increase with Air America Radio, and sought to obtain plaintiff employment with Westwood One, a radio network, and Sirius, a satellite radio network. Since defendants failed to perform their obligations under the contract, plaintiff timely sought to terminate it. Defendants, however, refused to accept the termination.

Plaintiff asserts several causes of action, but only four are relevant to this appeal. Plaintiff's first cause of action seeks to void the contract between her and the defendants and seeks to recover all monies paid by plaintiff to defendants during the contract's term. Plaintiff premises this relief on the ground that defendants acted as her employment agents without a license, thereby violating General Business Law § 172, and that by simultaneously acting as her employment agents, managers and attorneys, defendants also violated General Business Law § 187 (8). Plaintiff's fifth cause of action seeks monetary damages on the ground that in failing to disclose that they were not licensed to act as her employment agents and in unlawfully engaging in prohibited employment procurement activities, defendants breached their fiduciary duty. Plaintiff's sixth and seventh causes of action, both for unjust enrichment, are virtually identical, and therein she seeks damages, equal to all fees plaintiff paid to the defendants, as well as an accounting of defendants' profits for the contract term. The unjust enrichment claim is premised on violation of General Business Law § 172, insofar as

---

1. When deciding a motion to dismiss a complaint, pursuant to CPLR 3211, as is the case here, all allegations in the complaint are deemed to be true, and all reasonable inferences which can be drawn therefrom shall be resolved in favor of the plaintiff (*Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]; *Cron v Hargro Fabrics*, 91 NY2d 362, 366 [1998]).

defendants were not licensed to act as plaintiff's employment agents, and on a violation of General Business Law § 185, to the extent that the fees charged by the defendants were unlawful.

Subsequent to the commencement of this action, defendants moved to dismiss plaintiff's first, fifth, sixth, and seventh causes of action pursuant to CPLR 3211 (a) (2) (want of subject matter jurisdiction) and (7) (failure to state a cause of action). Defendants argued that insofar as General Business Law article 11 provides for neither an express nor an implied private right of action, plaintiff's causes of action, to the extent premised on violations of article 11, merited dismissal. To the extent that defendants asserted a counterclaim against the plaintiff for breach of contract, they also sought an order enjoining plaintiff from asserting any affirmative defenses premised on defendants' alleged violation of article 11. The motion court granted defendants' motion, finding that while article 11 provides for a limited express right of action against a licensed employment agency, it provides no similar express private right of action here, where the defendants were unlicensed during the relevant period (27 Misc 3d 722 [2010]). The motion court further held that, given article 11's comprehensive enforcement mechanism, no private right of action against an unlicensed employment agency existed. The motion court denied the portion of defendants' application seeking to enjoin plaintiff from raising a violation of article 11 as an affirmative defense to defendants' counterclaims. Plaintiff appeals and we affirm.

Article 11 applies to all employment agencies within the state (General Business Law § 170), and defines an employment agency as any person, who, for a fee, procures or attempts to procure employment for persons seeking employment or engagements (General Business Law § 171 [2] [a] [1]). The statute imposes a licensing requirement and as such, no person may "maintain, own, operate or carry on any employment agency" (General Business Law § 172) without a license obtained from the State's Commissioner of Labor, or if within New York City, the Commissioner of the Department of Consumer Affairs (id.). Additionally, anyone operating an employment agency is required to file a bond in the sum of $5,000 (General Business Law § 177 [1]), payable to the people of the State of New York or the City of New York (General Business Law § 177 [2]), and the bond

> "shall be conditioned that the person applying for
> the [employment agency] license will comply with

this article, and shall pay all damages occasioned to any person by reason of any misstatement, misrepresentation, fraud or deceit, or any unlawful act or omission of any licensed person . . . committed or omitted in the business conducted under such license, or caused by any other violation of this article" (*id.*).

Claims or suits upon the bond "may be brought in the name of the person damaged" and "[t]he commissioner may institute a suit against the bond on behalf of any person damaged" (General Business Law § 178). Fees chargeable by an employment agency are limited to those within article 11 (General Business Law § 185), and an employment agency which collects fees in contravention of the article's provisions is required to return the excess portions thereof within seven days after a demand is made (General Business Law § 186).

Enforcement of article 11 is statutorily delegated to the State Commissioner of Labor, except that in New York City, it is enforced by the Commissioner of Consumer Affairs (General Business Law § 189 [1]). Commensurate with his enforcement powers, the Commissioner, upon reasonable grounds to believe that an employment agency is violating article 11, has the authority to subpoena the records of the employment agency, subpoena witnesses, and conduct an investigation (General Business Law § 189 [2]). As against a licensed person, complaints shall be made orally or in writing to the Commissioner, who may then investigate, hold a hearing, take testimony, subpoena witnesses and direct production of documents (General Business Law § 189 [4]). If after a hearing it is determined that the licensed agency has violated article 11, the Commissioner may suspend or revoke the agency's or person's license and/or levy a fine (General Business Law § 189 [5]). Additionally, most violations of article 11, including the operation of an employment agency without a license, are misdemeanors, punishable by a fine of up to $1,000 and by imprisonment not to exceed one year (General Business Law § 190). Other violations, such as the failure to conspicuously post certain sections of article 11 (General Business Law § 188), are punishable by a fine of no more than $100 or imprisonment not to exceed 30 days (General Business Law § 190). The Commissioner in New York City is also vested with additional powers, authorizing him to bring proceedings against anyone operating a business without a license where the same is required (Administrative Code of City

of NY § 20-105). Pursuant to the Administrative Code, it is unlawful to engage in the unlicensed operation of any business requiring a license and such conduct is punishable by imposition of a $100 fine for each day the person operates without a license (*id.*). The Commissioner can also order that an unlicensed person cease operation of any business for which a license is required, can order the sealing of the premises where such unlicensed business is taking place, and can order the removal of any items utilized in connection with the unlicensed business (*id.*).

As will be discussed in detail below, plaintiff's first, fifth, sixth and seventh causes of action, premised upon defendants' violation of article 11, were properly dismissed.

Preliminarily, we affirm because we have previously determined that article 11 provides no private right of action (*Morin v Curtis Assoc. Personnel*, 56 AD2d 817 [1977]; *Greater N.Y. Mut. Ins. Co. v Wehinger Serv., Inc.*, NYLJ, May 14, 1974, at 2, col 2, [Sup Ct, NY County, May 7, 1974, Frank, J.], *affd* 47 AD2d 604 [1975], *lv denied* 36 NY2d 643 [1975]).[2] In *Greater N.Y.* and then again in *Morin*, we held that a violation of General Business Law § 187 could not be litigated in a plenary action and could only be litigated administratively. In *Greater N.Y.*, plaintiff sued defendant, an employment agency, alleging, inter alia, that the defendant, in order to derive commissions, induced the plaintiff's employees to terminate their employment, thereafter procuring jobs for them elsewhere. The plaintiff alleged that the defendant's actions violated General Business Law § 187, and upon the defendant's motion to dismiss the plaintiff's complaint

---

**2.** Plaintiff cites to several cases which she purports evince this State's long-standing history of allowing private actions for violations of article 11. Plaintiff's contention is without merit. In light of *Morin v Curtis Assoc. Personnel* (56 AD2d 817 [1977]) and *Greater N.Y. Mut. Ins. Co. v Wehinger Serv., Inc.* (NYLJ, May 14, 1974, at 2, col 2 [Sup Ct, NY County, May 7, 1974, Frank, J.], any case and, in particular any in this Department, which holds the existence of a private right of action for a violation of article 11 is contrary to our case law. Lower court cases such as *Friedkin v Harry Walker, Inc.* (90 Misc 2d 680 [1977]), which, in any event, never addressed the issue of the existence of a private right of action, should not be followed. For similar reasons and because in the absence of a private right of action there can exist no affirmative defense pursuant to such right (*Banque Indosuez v Pandeff*, 193 AD2d 265, 271 [1993]; *P & T Iron Works v Talisman Contr. Co., Inc.*, 18 AD3d 527, 528-529 [2005]), cases like *Pine v Laine* (36 AD2d 924 [1971], *affd* 31 NY2d 988 [1973]), also cited and relied upon by plaintiff, where the issue of the existence of a private right of action was not raised and where the court dismissed an action upon an affirmative defense premised on a violation of article 11, should also not be followed.

for want of subject matter jurisdiction, the action was dismissed (*id.*). In granting the defendants' motion, the motion court held that because enforcement of the statute was delegated to the Commissioner of Consumer Affairs, the plaintiff's only recourse for a violation of this section of the General Business Law was the administrative remedy provided by General Business Law § 189 (*id.*). Specifically, the motion court held that "the prohibition in such section [General Business Law § 187] is to be enforced in this locality [the City of New York] by the Commissioner of Consumer Affairs of New York City (General Business Law § 189), and the *only remedy available to plaintiff with respect to the statute is the administrative procedure detailed therein*" (*id.* at 8 [citation omitted and emphasis added]). Plaintiff appealed, we affirmed (47 AD2d 604 [1975]), and leave to appeal to the Court of Appeals was denied (36 NY2d 643 [1975]). Two years later, in *Morin*, we were confronted with nearly identical facts, and relying on *Greater N.Y.*, we affirmed dismissal of the plaintiff's complaint (*Morin* at 817). Accordingly, our holdings in both *Greater N.Y.* and *Morin* stand for the proposition that a violation of article 11 does not give rise to a private right of action, express or implied.

Notwithstanding the above-cited cases, there being a dearth of appellate case law on this issue, we feel the time is ripe for elaboration.

In order to determine whether article 11 contains an express private right of action, we begin with a review of the statute itself. Contrary to plaintiff's assertions, the holding of the motion court and the holding in *Shelton v Elite Model Mgt., Inc.* (11 Misc 3d 345 [2005]), we again conclude that article 11 does not promulgate an express right of action. While General Business Law § 177 (2) requires a bond conditioned on compliance with article 11 and requiring payment for "all damages occasioned to any person by reason of any misstatement, misrepresentation, fraud or deceit, or any unlawful act or omission" and General Business Law § 178 states that claims or suits "may be brought in the name of the person damaged upon the bond," the latter section delegates the initiation of an action upon the bond to the Commissioner who "may institute a suit against the bond on behalf of any person damaged." Thus, it is only the Commissioner who can institute an action upon the bond and against the licensed employment agency and not the individual sustaining injury or damages. The fact that the Commissioner's power to initiate an action upon the bond is not

compulsory under this section is not, as some might argue, an indication of an express limited private right of action. Instead, the discretion afforded to the Commissioner under General Business Law § 178 is merely a recognition that the initiation of a claim or suit on an employee's behalf will not always be required because General Business Law § 189 (2) vests the Commissioner with broad investigatory powers such that a suit might be obviated.

Logically, if article 11 promulgated an express private right, we would expect to find it in General Business Law § 189, the article's enforcement section. Accordingly, the absence of such an express right in General Business Law § 189, which, instead, vests all enforcement powers of the article in the Commissioner, is quite telling (*accord Columbia Artists Mgt., LLC v Swenson & Burnakus, Inc.*, 2008 WL 4387808, 2008 US Dist LEXIS 74377 [SD NY 2008]; *Masters v Wilhelmina Model Agency, Inc.*, 2003 WL 145556, 2003 US Dist LEXIS 698 [SD NY 2003]). General Business Law § 190, the article's penalties provision, where we would also expect to find an express private right of action, is similarly bereft of any language promulgating such right. Instead, this section, the only section addressing penalties and remedies against an unlicensed agency, states that such transgression can solely be redressed through the initiation of criminal proceedings (General Business Law § 190). Any assertion that General Business Law § 186 provides an express private right of action against unlicensed employment agencies, as the court held in *Shelton*, is meritless. While General Business Law § 186 requires the return of fees upon demand, enforcement for noncompliance is governed by General Business Law §§ 189 and 190, which, again, contain no express right of action.

When the language of article 11 is compared with the language in a legion of other statutes which *do* provide an express private right of action, it is manifestly evident that article 11 cannot be read to provide such right of action. For example, General Business Law § 899-n (1), which provides an express right of action to an educational institution for damages stemming from a violation of that statute, states that "[a]n educational institution *shall have a right of action* against an athlete agent for damages caused by any violation of this article" (emphasis added). General Business Law § 609 (1), providing an express private action for damages incurred in the bailment and storage of goods, states that "[a]ny consumer

bailor damaged by an unlawful detention of his goods or any other violation of this article *may bring an action for recovery of damages* and the return of his goods" (emphasis added). General Obligations Law § 11-100 (1), providing an express private right action for injuries stemming from intoxication, states, "Any person who shall be injured in person, property, means of support or otherwise, by reason of the intoxication or impairment [of a person under 21 years of age] . . . *shall have a right of action to recover actual damages*" (emphasis added). No such language can be found in General Business Law article 11.

Since article 11 provides no express private right of action, our inquiry must then turn to whether the article may nevertheless fairly be read to imply a private right of action.

Where a statute fails to expressly prescribe a private right of action, one can nevertheless be implied, provided that it is consistent with the legislative intent (*Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 38 [1999]; *Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207, 211 [1990]; *Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]; *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 325 [1983]). A private right of action will be implied if (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the recognition of such right promotes the legislative purpose which undergirds the statute; and (3) the creation of such right is consistent with the legislative scheme for the statute (*Sheehy* at 633). Legislative intent is thus the linchpin in any case where a private right of action is to be implied. As the Court in *Burns* aptly stated,

> "The far better course is for the Legislature to specify in the statute itself whether its provisions are exclusive and, if not, whether private litigants are intended to have a cause of action for violation of those provisions. *Absent explicit legislative direction, however, it is for the courts to determine, in light of those provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which legislative familiarity is presumed, what the Legislature intended*" (59 NY2d at 325 [emphasis added]).

The first prong of the above-mentioned test is often the simplest to resolve, since whether the proponent of an implied private right of action is within the class for whose benefit a

statute was enacted is usually manifest from the language itself (*see Uhr*, 94 NY2d at 38-39 [Court found that plaintiff, a student, was undoubtedly a member of the class for whose benefit Education Law § 905 (1) was enacted insofar as the statute mandated that students be screened for scoliosis]; *Sheehy*, 73 NY2d at 633-634 [Court found that plaintiff, a minor, was a member of the class for whose benefit Penal Law § 260.20 (4), prohibiting sale of alcohol to minors, was enacted]).

Resolution of the second prong, whether an implied private right of action promotes the legislative purpose, is a two-part inquiry, requiring determination of (1) what the Legislature was seeking to accomplish in enacting the statute; and (2) whether a private right of action promotes that objective (*Uhr* at 38). To that end, it is of course helpful to look at the statute's legislative history, such as amendments to the statute itself, and the memoranda and/or letters submitted during the legislative process (*id.* at 38-39 [purpose of statute established by reviewing an amendment thereto as well as a letter submitted in support thereof]; *Brian Hoxie's Painting Co.*, 76 NY2d at 213 [purpose of statute established by reviewing memorandum submitted in support of its passage]).

The third prong, whether an implied private right of action is consistent with the legislative scheme is "the most critical . . . in determining whether to recognize a private cause of action where one is not expressly provided" (*id.* at 212). Here, the relevant inquiry is whether the private right of action coalesces smoothly with the legislative goal, in particular with its enforcement mechanism, or whether it is completely at odds with the same (*Uhr*, 94 NY2d at 40). As the Court of Appeals stated in *Uhr*,

> "In assessing the 'consistency' prong, public and private avenues of enforcement do not always harmonize with one another. A private enforcement mechanism may be consistent with one statutory scheme, but in another the prospect may disserve the goal of consistency—like having two drivers at the wheel. Both may ultimately, at least in theory, promote statutory compliance, but they are born of different motivations and may produce a different allocation of benefits owing to differences in approach" (*id.*).

Thus, whether a private right of action is consistent with the legislative scheme often depends in large measure on whether

the statute has a potent or extensive enforcement mechanism[3] and whether that method of enforcement was intended to be exclusive (*id.; Brian Hoxie's Painting Co.*, 76 NY2d at 212-213). In *Uhr*, the Court concluded that an implied private right of action would have been inconsistent with Education Law § 905 (1), because not only did that statute carry its own potent enforcement mechanism, charging the Commissioner of Education with that statute's enforcement, but its legislative history evinced an intent to immunize the defendant school district from liability (94 NY2d at 40-41). Similarly, in *Burns*, the Court would not find an implied private right of action, finding that the crushing personal liability such right would impose on unions and employees for violation of the Taylor Law was inconsistent with the legislative scheme, which over the years had relaxed the sanctions and liability imposed on those who violated the statute (59 NY2d at 329-330).

Article 11 has its genesis in chapter 432 of the Laws of 1904, enacted on April 27, 1904. Chapter 432 was enacted because there was a need at the time to regulate employment agencies and protect employees from victimization at the hands of unscrupulous employment agencies (*Dorrell Assoc. v Urb Prods. Corp.*, 67 Misc 2d 716, 718 [1971]). The need for regulation was so great that newspaper articles regarding this issue were then quite common. For example, on April 12, 1904, an article in the New York Times with respect to employment agencies read, in part:

> "The investigation of the [employment] agencies in New York City, covering two years, shows beyond a doubt that at least 30 per cent. of these agencies are used as supply stations for questionable places, and that no law in existence, except the law of abduction, which is wholly inadequate, can touch offices misleading girls from honest labor into immoral lives. The present law requires no bond, no character, no responsibility from a man who wishes to run

---

3. To the extent that in *Goldberg v Enterprise Rent-A-Car Co.* (14 AD3d 417 [2005]) we previously held that a potent enforcement mechanism was, by itself, dispositive of whether a private right of action is consistent with the legislative scheme, that case should not be followed. It is clear that potency is but one factor and thus, by itself, not determinative (*see AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6, 17 [2008] [holding that to the extent that *Matter of Carrube v New York City Tr. Auth.* (291 AD2d 558 [2002]) proscribes a private right of action solely upon the finding of a potent enforcement mechanism, it should not be followed]).

such an office. Upon the payment of $25 any man, even the proprietor of a disorderly or gambling house, can open an agency for supplying labor. Such an agency can be kept in a saloon, in a disease-laden or vermin-infested building" (*A Bill That Should Be Passed*, New York Times, Apr. 12, 1904, at 8, col 3).

Significantly, with regard to chapter 432, section 2 imposed a licensing requirement, and while section 8 delegated enforcement to the Commissioner, section 3, imposing a bond requirement, also promulgated a limited express right of action against a licensed employment agency. Specifically, section 3 stated "[i]f any person shall be aggrieved by the misconduct of any such licensed person, and shall recover judgment against him therefor, such person may . . . *maintain an action in his own name upon the bond . . . in any court having jurisdiction*" (emphasis added). As against an unlicensed agency, the sole remedy was, as it is today, penal sanctions and fines at the Commissioner's behest (*id.* § 8).

Article 11 was first enacted in 1909, and it incorporated much of the language found within its predecessor, chapter 432. Specifically, like chapter 432, it provided a limited express right of action against a licensed employment agency (General Business Law § 171, as added by L 1909, ch 25), the Commissioner was still charged with enforcing the article (General Business Law § 178, as added by L 1909, ch 25), and the remedy against any unlicensed employment agency, or violations of the article, namely penal sanctions and fines, remained unchanged (*id.*). By 1958, however, because of its then "many weaknesses, ambiguities, and unfair and out-dated provisions" (Mem of Joint Legislative Comm on Industrial and Labor Conditions, 1958 NY Legis Ann, at 280), article 11 was amended and, largely resembling its present incarnation, what was once section 171 became the definition section and the limited express right of action previously contained therein was omitted. Instead, section 178 read, as it does today, that claims or suits could be "brought in the name of the person damaged upon the bond" (L 1958, ch 893, § 7), and while enforcement of the article was still delegated to the Commissioner, he was now vested with a panoply of enhanced powers to aid him in enforcing the article (L 1958, ch 893, § 20; *see* General Business Law § 189). The Commissioner was given the authority to investigate violations of the statute and, incident thereto, could now subpoena documents and witnesses (*id.*).

In 1975, article 11 was once again amended. Much like the amendment in 1958, the Legislature again delegated more enforcement powers to the Commissioner. A review of a budget report prepared by the New York State Senate reveals that what was driving the 1975 amendment was that "[t]he Department of Labor has evidence of a series of placement agency abuses which justify the more stringent regulatory provisions of this legislation" (Budget Report on Bills, July 10, 1975, at 2, Bill Jacket, L 1975, ch 632). To address these abuses, the bill would now specify that "the Industrial Commissioner [would] institute suit on behalf of the person damaged and increase the penalty for violations of the employment agency statutes" (*id.*). Significantly, section 178, as amended in 1975, contained the very language we see today, authorizing the Commissioner to initiate suit on behalf of an injured person against a licensed employment agency and upon the bond.

Based on the foregoing we conclude that an implied private right of action for a violation of article 11 is at odds with the legislative intent, inasmuch as it is inconsistent with the legislative scheme. Certainly, plaintiff, who alleges to have contracted with defendants for the procurement of employment, is within the class article 11 was enacted to benefit. To the extent that a private action would deter future unlawful behavior by defendants and other employment agencies and agents, an implied private right of action would wholly promote the legislative purpose. This is particularly true since private actions would expose employment agencies and agents to much broader liability because the potential damages could exceed the size of the bond and in the case of unlicensed employment agencies, the fines they are subject to pursuant to General Business Law § 190.

However, a private right of action would be wholly inconsistent with the legislative scheme. Article 11 has a potent enforcement mechanism (*Uhr*, 94 NY2d at 40-41) which, as per the 1958 and 1975 amendments, eroded and ultimately eliminated the private right of action once prescribed and delegated all enforcement to the Commissioner. While an enforcement mechanism can always be made more potent, article 11's enforcement mechanism vesting the Commissioner with broad investigatory, adjudication, and sanctioning power is quite extensive (General Business Law § 189), even exposing violators to imprisonment for up to one year (General Business Law § 190). The 1975 amendment itself is perhaps the most compelling evidence that the Legislature intended that the sole recourse for

article 11's violation would be that enumerated therein. With the 1975 amendment, the Legislature not only delegated to the Commissioner the power to initiate the previously prescribed private action against a licensed employment agency, but also declined to promulgate any express private right of action, despite the fact that we had recently declined to find such right in *Greater N.Y.* (*Sheehy*, 73 NY2d at 635 [no private right of action could be implied for defendant's violation of General Obligations Law § 11-101, because the Legislature's failure to expressly provide such right, despite case law precluding such right in a nearly identical statute evinced intent to preclude such right]; *Uhr*, 94 NY2d at 41 [Legislature's failure to prescribe an express right of action for violation of Education Law § 905 (2), despite case law declining to imply such right, was evidence of intent to preclude a private right of action]). The Legislature is presumed to know that before it amended article 11 in 1975, we found that article 11 provided no private right of action, and could have, but chose not to, express that right in the subsequent amendment.

Accordingly, the order of the Supreme Court, New York County (Michael D. Stallman, J.), entered March 5, 2010, which granted defendants' motion to dismiss plaintiff's first, fifth, sixth, and seventh causes of action, premised on violations of General Business Law article 11, should be affirmed, with costs.

SWEENY, J.P., MOSKOWITZ, RENWICK and DEGRASSE, JJ., concur.

Order, Supreme Court, New York County, entered March 5, 2010, affirmed, with costs.