11-4430-cv
Schlessinger v. Valspar Corp.

UNITED STATES COURT OF APPEALS

For the Second Circuit

_____

August Term, 2011

(Submitted: March 29, 2012                               Decided: July 10, 2012)

Docket No. 11-4430-cv

_____

LORI SCHLESSINGER, BRENDA PIANKO,

*Plaintiffs-Appellants*,

—v.—

VALSPAR CORPORATION,

*Defendant-Appellee.*

_____

Before:  STRAUB, POOLER, *Circuit Judges*, and KORMAN, *District Judge*.[*]

_____

On appeal from an Order dated September 23, 2011 by the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*) granting Defendant-Appellee's motion to dismiss for failure to state a claim upon which relief can be granted.  Plaintiffs brought this putative class action alleging that they purchased furniture maintenance agreements containing a termination clause that runs afoul of New York General Business Law § 395-a. Plaintiffs brought a breach of contract claim on the theory that because the provision violated § 395-a, it should be struck from the contract.  The defendant would then be in breach of the remaining terms, which required defendant to service plaintiffs' furniture.  Plaintiffs also alleged that defendant had committed a deceptive business practice in violation of General Business Law § 349 by misleading them about the substance of their legal rights.  The District Court dismissed both claims, holding that neither action was maintainable because there was no implied cause of action under § 395-a.  Because the determination of this case requires the resolution of two novel issues of state law, we **CERTIFY** two questions to the New York Court of Appeals:  (1) May parties seek to have contractual provisions that run contrary to General Business Law § 395-a

_____

[*] The Honorable Edward R. Korman, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

declared void as against public policy? and (2) May plaintiffs bring suit pursuant to § 349 on the theory that defendants deceived them by including a contractual provision that violates § 395-a and later enforcing this agreement?                    _____

DANIEL A. EDELMAN, Cathleen M. Combs, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, Lawrence Katz, Law Offices of Lawrence Katz, Cedarhurst, NY, *for Plaintiffs-Appellants*.

PAULA J. MORENCY, Aphrodite Kokolis, Jeannice D. Williams, Schiff Hardin LLP, Chicago, IL, David Jacoby, Schiff Hardin LLP, New York, NY, *for Defendant-Appellee*.

_____

STRAUB, *Circuit Judge*:

Plaintiffs-Appellants Lori Schlesssinger ("Schlessinger") and Brenda Pianko ("Pianko") (collectively "plaintiffs") appeal from a judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*), dismissing their complaint for failure to state a claim upon which relief can be granted. Plaintiffs argue that they purchased a furniture maintenance agreement from Defendant-Appellee Valspar Corporation ("Valspar") that contained a termination provision that runs contrary to New York General Business Law § 395-a, which prohibits the termination of maintenance agreements except for specified reasons. They brought suit for common law breach of contract and for deceptive business practices under New York General Business Law § 349. The District Court held that both causes of action were unavailable because § 395-a provided for no implied private right of action and plaintiffs could not use breach of contract and § 349 claims as a vehicle for asserting violations of § 395-a. For the reasons below, because we find that resolution of this appeal depends upon novel issues of state law, we certify questions to the New York Court of Appeals.

2

**BACKGROUND**

Schlessinger and Piakno both separately purchased furniture from Fortunoff department store ("Fortunoff"). They also opted to purchase a furniture protection plan ("the Plan"). Defendant Valspar Corporation ("Valspar"), acting under the trade name "Guardsman," sold the plans to Fortunoff, which in turn sold them to Schlessinger and Pianko.

Pursuant to each Plan, Valspar agreed to repair or replace the covered furniture in the event that it suffered certain kinds of damage. In carrying out its obligations under the Plan, Valspar could provide service ranging from providing a cleaning kit to refunding the purchase price in the form of store credit or cash. Each Plan also contained a clause providing as follows:

> If Guardsman determines that the reported stain or damage is covered under this Protection Plan, Guardsman will perform one or more of the following: . . .
>
> > If the particular store location where you originally purchased your furniture ("Store") has closed, no longer carries Guardsman as a supplier, changed ownership, or has stopped selling new furniture since your purchase, Guardsman will give you a refund of the original purchase price of this Protection Plan.

Plaintiffs refer to this provision as the "store closure provision."

Since plaintiffs purchased these plans, Fortunoff has filed for bankruptcy and ceased operations. Pianko's furniture has since been damaged in a manner she claims is covered by the Plan, and she made a claim on approximately April 14, 2010. Valspar rejected the claim, citing the store closure provision.

Although the complaint does not specify, it appears that Schlessinger has not attempted to file a claim under her Plan or had any further contact with Valspar. It also appears that she has not received a refund for the purchase price of her Plan, even though Valspar presumably would refuse to fix or replace her furniture if she were to make such a claim. Schlessinger asserts a claim under § 349, but does not assert a breach of contract claim.

3

Plaintiffs brought this putative class action in the Eastern District of New York. They allege that the store closure provision violates New York General Business Law § 395-a, which generally prohibits service providers from terminating maintenance agreements with certain narrow exceptions. It provides:

> 2. No maintenance agreement covering parts and/or service shall be terminated at the election of the party providing such parts and/or service during the term of the agreement unless prior to or upon delivery of a copy of the agreement the buyer is notified in writing that the agreement may be cancelled for:
>
> > a. non-payment; or
>
> > b. use of the item primarily for commercial purposes, unless the agreement so provides. When a maintenance agreement is terminated because of use of the item primarily for commercial purposes, the party providing the parts and/or service must reimburse the buyer on a pro rata basis for the remaining period of time or mileage for the unused portion of the maintenance agreement less the cost of any parts and/or service already provided from the date of termination; or
>
> > c. change in the buyer's residence beyond the disclosed service area, except where the buyer provides transportation or shipping to and from the site of service. When a maintenance agreement is terminated because of a change in the buyer's residence beyond the disclosed service area, either the buyer or the party providing the parts and/or service may terminate the maintenance agreement. Reimbursement to the buyer shall be made on a pro rata basis for the remaining period of time or mileage for the unused portion of the maintenance agreement from the date of notice of change in the buyer's residence.

N.Y. Gen. Bus. Law § 395-a(2). The statute allows the New York Attorney General to institute an action for enforcement of this section and provides that "a violation . . . shall be punishable by a civil penalty of not more than three hundred dollars." *Id*. § 395-a(4).

Plaintiffs brought two causes of action. First, they alleged that Valspar breached the terms of the service agreement. They argue that the store closure provision violated § 395-a because it allowed Valspar to terminate the Plan for a reason that does not fit into § 395-a's narrow grounds for termination. The language, according to plaintiffs, should therefore be

4

excised from the contract. Valspar would then be in breach of the remaining terms of the Plan because it did not service Pianko's furniture as required. Second, plaintiffs allege that Valspar violated General Business Law § 349, which prohibits deceptive business practices aimed at consumers. They argue that by including the store closure provision in the Plan, Valspar misled them about their rights under New York law. They also argue that denying the claims based on the store closure provision was itself a deceptive practice.

Valspar moved to dismiss the complaint, arguing that § 395-a does not provide for a private cause of action. Valspar argued that because § 395-a specifically provides the Attorney General the right to bring suit, the statute impliedly forecloses private parties from doing so. Valspar further argued that plaintiffs could not bring suit under either a breach of contract or a § 349 theory where the theories incorporate § 395-a. The District Court agreed with Valspar on each point and granted its motion to dismiss in full.

**DISCUSSION**

On an appeal from a grant of a motion to dismiss, we review de novo the decision of the district court. *Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 219 (2d Cir. 2012). We accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 36 (2d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

**I.      Breach of Contract**

Plaintiffs argue that the store closure provision violates § 395-a and must be struck from the contract. Once the contract is reformed in this manner, Valspar is in breach of the remaining

5

terms because it did not service Pianko's furniture.  Valspar argues that to allow such a remedy

violates the legislature's clear intent to vest the Attorney General with sole responsibility for

enforcing § 395-a.  This issue lies at the intersection of two legal doctrines that lead to

conflicting results:  the doctrine that courts will not enforce illegal contracts and the doctrine that

courts should follow clearly expressed legislative intent.

As a general rule, New York courts will not enforce illegal contracts.  *See Stone v.*

*Freeman*, 82 N.E.2d 571, 572 (N.Y. 1948) ("It is the settled law of this State (and probably of

every other State) that a party to an illegal contract cannot ask a court of law to help him carry

out his illegal object, nor can such a person plead or prove in any court a case in which he, as a

basis for his claim, must show forth his illegal purpose.")

The general rule is modified, however, where the illegality concerns the violation of a

regulatory statute:

> [T]he violation of a statute that is merely *malum prohibitum* will not necessarily
> render a contract illegal and unenforceable. If the statute does not provide
> expressly that its violation will deprive the parties of their right to sue on the
> contract, and the denial of relief is wholly out of proportion to the requirements of
> public policy the right to recover will not be denied.

*Benjamin v. Koeppel*, 650 N.E.2d 829, 830 (N.Y. 1995).  Under this rule, a court may enforce an

illegal contract if three requirements are satisfied:  (1) the statutory violation is *malum*

*prohibitum*; (2) the statute that renders the contract illegal does not specifically require that all

contrary contracts be rendered null and void; and (3) the penalty imposed by voiding the contract

is "wholly out of proportion to the requirements of public policy."  *Id*.  It is clear that here the

first two requirements are satisfied.  It is less clear whether voiding the contractual provision is

"wholly out of proportion to the requirements of public policy."

6

The New York Court of Appeals has invoked the above rule when deciding whether to enforce a contract notwithstanding the fact that the plaintiff did not have the license necessary to enter into the contract. *See, e.g.*, *Benjamin*, 650 N.E.2d 829; *Richards Conditioning Corp. v. Oleet*, 236 N.E.2d 639 (N.Y. 1968); *John E. Rosasco Creameries, Inc. v. Cohen*, 11 N.E.2d 908 (N.Y. 1937); *Johnston v. Dahlgren*, 59 N.E. 987 (N.Y. 1901). In *Benjamin*, for example, the plaintiff was an attorney who was admitted to the bar, but failed to register with the Office of Court Administration. *Benjamin*, 650 N.E.2d at 830. He referred a case to another law firm in return for a share of any fees earned, and the law firm did not pay. *Id*. He sued the law firm, and the law firm argued that the fee-sharing agreement was invalid because the lawyer had not complied with the registration requirements. *Id*. The New York Court of Appeals held that the contract was enforceable. *Id*. at 832. The court found that the regulation at issue "more closely resembles a revenue-raising measure than a program for 'the protection of public health or morals or the prevention of fraud,'" *id*. at 831 (quoting *Galbreath-Ruffin Corp. v. 40th & 3rd Corp.*, 227 N.E.2d 30, 34 (N.Y. 1967)), and that there existed adequate mechanisms to enforce the regulation without imposing a civil forfeiture, *id*. at 832.

*Benjamin* and its kin are different from the case at bar in several key respects. The illegality in the licensing cases arises from the fact that the plaintiff entered into the contract at all. If the party seeking to enforce the contract had been properly licensed, the subject matter of the contract would be perfectly legal. In contrast, here the legality of the contract does not turn on the licensing of the party seeking enforcement. Rather, plaintiffs point to a particular provision that they argue runs contrary to statute and seek to reform the rest of the contract without the offending provision. Unlike in *Benjamin*, plaintiffs here do not seek to avoid the entire contract; merely to excise the store closure provision.

Further, in the licensing cases, there is the potential that the defendant could receive a windfall, essentially receiving service for free. "[T]he courts are especially skeptical of efforts by clients or customers to use public policy 'as a sword for personal gain rather than a shield for the public good.'" *Benjamin*, 650 N.E.2d at 831 (quoting *Charlebois v. J.M. Weller Assocs., Inc.*, 531 N.E.2d 1288, 1292 (N.Y. 1988)). If the contract here were to be reformed, plaintiffs would merely receive the benefit of a maintenance agreement that complied with state law. Conversely, the *Benjamin* plaintiff would lose something if the entire contract were voided, specifically, the value of his services. Valspar here would lose only the right to invoke an illegal contractual provision. This analysis suggests that the penalty imposed by voiding a contractual provision that runs contrary to regulation is not wholly out of proportion to the requirements of public policy.

At least one intermediate appellate court has adopted the procedure that plaintiffs advance here. In *Caruso v. Allnet Communication Servs., Inc.*, the plaintiffs argued that a provision of an employment contract was void and sought to bring a breach of contract suit under the remaining terms of the contract. Brief for Appellant at 26, *Caruso v. Allnet Commc'n Servs, Inc.*, 662 N.Y.S.2d 468, (N.Y. App. Div. 1st Dep't 1997). The trial court dismissed this claim, holding that the sole remedy for violation of the regulation at issue was an enforcement action by the Commissioner of Labor. *Id.* The First Department reversed, stating, "Rather than consider the illegal contract as void *in toto*, the better view is to sever the offending provision and validate the basic agreement; under this approach, there is a cause of action for breach of the valid remainder of the contract." 662 N.Y.S.2d at 469-470.

Were we to end our analysis here, we could conclude that the offending store closure provision should be read out of the Plan and that plaintiffs should be able to bring a suit for

8

breach of contract pursuant to the remaining terms of the Plan. But this outcome is in tension with the outcome that is suggested by the law of implied causes of action. The law of implied causes of action demands that we carefully consider legislative intent, and the evidence here suggests that the New York legislature did not intend to create a private cause of action for § 395-a.

At the outset, it should be noted that there is some question as to whether this body of law is applicable at all. The doctrine speaks of an implied "private right of action." *See, e.g.*, *Sheehy v. Big Flats Cmty. Day, Inc.*, 541 N.E.2d 18, 22 (N.Y. 1989). The usual implied private right of action case seeks to fashion a tort remedy from the violation of a statutory provision. In *Sheehy*, for example, a minor was served alcohol and later injured while intoxicated. *Id*. at 19. She brought suit pursuant to law prohibiting the sale of alcohol to minors, and the court held that this regulation did not provide for the private right of action the plaintiff sought. *Id*. at 22. Strictly speaking, this case is different because the common law of contracts provides the right of action.

Nonetheless, one intermediate appellate court has analyzed a similar case under the doctrine of implied private right of action. *Rhodes v. Herz*, 920 N.Y.S.2d 11 (N.Y. App. Div. 1st Dep't 2011). In *Rhodes*, the court considered whether a contract should be deemed void because one party did not comply with state licensing requirements. *Id*. at 13. Despite the fact that there is a substantial body of law analyzing such cases under the doctrine of illegal contracts, the court instead analyzed the case as an implied right of action and concluded that the only available remedy was an administrative remedy. *Id*. at 15-16.

If this issue were to be analyzed as one of implied right of action, the proper conclusion could be that the legislature did not evince the requisite intent to void provisions that were contrary to § 395-a. In determining whether an implied private right of action exists under a

9

statute, the courts are to consider three factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy*, 541 N.E.2d at 20.

The District Court properly concluded that the first two factors are satisfied here. The legislature intended to protect purchasers of maintenance agreements in enacting the statute, and recognizing a private right of action would promote the purpose of protecting such purchasers. But the legislature does not seem to have expressed an intent for there to be a remedy of voiding contrary provisions. Section 395-a expressly provides that the Attorney General may bring suit against those who violate its mandate, so a private right of action would not be consistent with legislative intent.

As the New York Court of Appeals has recognized, the New York legislature specifically amended § 349 of the General Business Law to provide for a private right of action. *See Varela v. Investors Ins. Holding Corp.*, 615 N.E. 2d 218, 219 (N.Y. 1993). In doing so, it evinced an intent to exclude a private right of action in other portions of the General Business Law. *Id.* Furthermore, the General Business Law is usually very specific in declaring that certain contractual provisions are unenforceable as against public policy. *See, e.g.*, NY. Gen. Bus. Law § 23(b) (waiver of warranty for vehicles purchased at auction); *id.* § 198-a(i) (waiver of warranty for a new motor vehicle); *id*. § 340(1) (agreements in restraint of trade); *id*. § 349-b(11) (waiver of rights when purchasing telephone equipment); *id*. § 349-d (waiver of rights in contracts for energy services); *id.* § 394-b (contracts for "physical or social skills . . . measured by the life of the person receiving such instruction"); *id.* § 399-c (mandatory arbitration clauses in certain consumer contracts); *id*. § 627 (waiver of rights in health club contracts). This is merely a

sampling of the panoply of provisions in the General Business Law rendering certain contracts void. Given the absence of such a provision in § 395-a, it seems that the legislature did not intend to provide for an implied right to void provisions that run contrary to its dictates.

If we were to consider either line of cases in isolation, we would reach contrary conclusions. Further, resolution of which doctrine (or another) applies could have implications for regulations beyond § 395-a. We thus believe that it is better for us to defer to the New York Court of Appeals for resolution of this important issue of state law.

**II.      General Business Law § 349**

Plaintiffs argue that by including the store closure provision in the Plan and later denying Pianko's claim on the basis of the store closure provision, Valspar committed a deceptive business practice in violation of § 349.[1] Although their legal theory is somewhat unclear, plaintiffs appear to argue that through these actions, Valspar deceived them as to the substance of their legal rights.

The District Court dismissed these claims, holding that it was bound by our prior holdings in *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) and *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005). In *Conboy*, the plaintiff couched a violation of General Business Law § 601—which prohibits the placement of debt collection phone calls at inappropriate hours, but allows for no private right of action—as a deceptive business practice under § 349. We held that "plaintiffs cannot thwart legislative intent by couching a Section 601 claim as a Section 349 claim." *Conboy*, 241 F.3d at 258.[2]

---

[1] New York General Business Law § 349(a) provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

[2] Plaintiffs argue that we should limit *Conboy* and *Broder* to their facts. In both cases, the plaintiffs failed to allege a deceptive practice. In *Conboy*, for example, the plaintiffs argued that the defendants committed a deceptive practice

11

After we decided *Conboy* and *Broder*, the Second Department considered a similar case and came to a different result. *See Llanos v. Shell Oil Co.*, 866 N.Y.S.2d 309, 310-311 (N.Y. App. Div. 2d Dep't 2008). In *Llanos*, the court considered whether a violation of the laws regulating gift cards could constitute a deceptive practice. *Id.* The court observed that, under established New York law, statutory remedies are generally considered to be cumulative of common law remedies, the assumption being that statutes will abrogate existing remedies expressly. *Id.* at 310. The court held that the same rule should apply for existing statutory remedies. *Id.* at 311. Because § 396-i did not expressly make an Attorney General action the exclusive remedy, § 349 remedies were still presumed to exist where the plaintiff alleged some deceptive practice that also violated a regulatory provision. *Id.*

The *Llanos* court began its analysis by observing that it was not deciding whether a violation of General Business Law § 396-i, which governs gift cards, contains an implied private right of action. *Id.* at 310. It is therefore arguable that *Llanos* is distinguishable from the case here, where it seems clear that plaintiffs could not bring suit alleging a violation of § 395-a independent of a breach of contract or § 349 claim. But the language of *Llanos* suggests that such a distinction is inappropriate. The *Llanos* court seems to hold that the existence of a private right of action under § 396-i is irrelevant to whether plaintiffs may bring a § 349 claim.

As above, we believe it more appropriate for the New York Court of Appeals to resolve this important issue of state law. The resolution of this issue turns on legislative intent, and we believe that the Court of Appeals is in a better position to assess the intent of the New York legislature. Accordingly, we certify a second question regarding this issue.

by calling them at inappropriate times. In addition to holding that there could be no § 349 cause of action that incorporated another regulatory statute without a private right of action, we observed that this practice was not actually deceptive. *Conboy*, 241 F.3d at 258. Although both findings factored into our analysis, the better reading of *Conboy* is that each functioned as independent bases for decision.

12

**CONCLUSION**

For the foregoing reasons and pursuant to New York Court of Appeals Rule 500.27 and Local Rule 27.2 of this court, we respectfully **CERTIFY** to the Court of Appeals the following questions:

1. May parties seek to have contractual provisions that run contrary to General Business Law § 395-a declared void as against public policy?

2. May plaintiffs bring suit pursuant to § 349 on the theory that defendants deceived them by including a contractual provision that violates § 395-a and later enforcing this agreement?

"As is our practice, we do not intend to limit the scope of the Court of Appeals' analysis through the formulation of our question, and we invite the Court of Appeals to expand upon or alter [these] question[s] as it should deem appropriate." *Joseph v. Athanasopoulos*, 648 F.3d 58, 68 (2d Cir. 2011).

It is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of the briefs, the appendix, and the record filed in this court by the parties. The parties shall bear equally all fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. This panel will resume its consideration of this appeal after the disposition of this certification by the New York Court of Appeals.